## SUPREME COURT.

### John D. Negus agt. The City of Brooklyn and others.

*Brooklyn Elevated Railway — Power of the supreme court to prevent (by injunction) the common council from passing over the mayor's veto a resolution changing the route of such railway — The consent of the board not sufficient without that of the mayor — No right to change the route since the constitutional amendment of 1875 — The receiver no power to accept the franchise to be conferred by the common council — The resolution a gross perversion of any discretion, and tending to establish a public nuisance.*

The Bruff Elevated Railway Company of Brooklyn was incorporated by an act passed May 26, 1874. The authority conferred upon it to appropriate the streets in the city is contained in section 3 of that act and is as follows: (After reciting the route as fixed between the East river suspension bridge and Woodhaven, Queens county) the latter part of the act reads thus: "Or on such streets and avenues as may be named by the mayor and common council of the city of Brooklyn as being more suitable for carrying out the objects contemplated in the erection of said railway." The common council passed a resolution, which, in effect, authorizes an elevated railroad to be constructed upon Fulton street and Myrtle avenue and several other streets not named in the said act of incorporation. The mayor vetoed the same. They claim the right to pass said resolution under the last clause of section 3 of the charter, and this nearly eight years after the corporate franchise was granted, and a considerable time after the railway company had appropriated the streets named in its charter to its corporate uses. The common council proposes to pass the resolution over the mayor's veto, and an injunction is sought by the plaintiff, who sues in behalf of himself and others similarly situated to restrain such proposed action.

*Held, first.* That the court has the power to prevent the commission of illegal acts by the members of the common council in a proper case and at the suit of the proper parties. The members of the common council are mere agents with defined and limited powers. While the court cannot rightfully control the proper exercise of the discretion vested in them, yet when they threaten an abuse or illegal exercise of such discretion, and especially when they claim the right to exercise powers which they do not possess, it is the duty of the court to interpose its authority whenever it becomes necessary for the protection of public or private rights or interests.

*Second.* The right of the plaintiff to maintain this action rests: First. Upon the familiar principle that one who will be especially injured by the

creation of a public nuisance, may invoke the interposition of the court to prevent it. Second. Upon that provision of the charter of the city of Brooklyn, which makes the aldermen the trustees, and the resident taxpayers *cestuis que* trustees in respect to the property intrusted to the care of the former; and, Third. Upon the act of 1881, chapter 531, which expressly authorizes the prosecution of all officers, agents, &c., acting on behalf of any municipal corporation, by taxpayers, by action to prevent any illegal act.

*Third.* That the consent of the board of aldermen is not sufficient without that of the mayor. The statute plainly requires the consent of both. The unanimous consent of the common council would not be an effectual execution of the power, much less would the consent of two-thirds of the members thereof, however manifested. Nor was the exercise of the power committed to a single board composed of the mayor and common council. But if such was the nature, it could be exercised only upon a meeting of all, or a meeting of a majority, upon due and reasonable notice.

*Fourth.* That the company having elected to adopt the route designated in the charter, and the mayor and common council having acquiesced therein, such election has barred all parties concerned, and has put an end to the power to change the route so designated.

*Fifth.* That the power to change the route was also annulled by the amendment to article 3 of the constitution, which took effect January 1, 1875.

*Sixth.* That the action of the common council would be ineffectual for lack of power in the receivers of the railroad company to accept the new privileges or franchises which the common council purpose to confer.

*Special Term, December,* 1881.

Motion by plaintiff to continue the injunction enjoining the common council from passing over the mayor's veto the resolution changing the route of the Bruff railway.

*David Barnett, Herbert G. Hull, T. C. Cronin* and *Erastus Cook,* for plaintiffs.

*Winchester Britton,* for the common council.

*Joshua M. Van Cott,* for the receivers.

Gilbert, J. — The Elevated Railway Company, defendant, was incorporated by an act passed May 26, 1874. The authority

Negus agt. City of Brooklyn.

conferred upon it to appropriate the streets in the city is contained in section 3 of that act, and is as follows: (Here the route is recited as fixed between the East river, Suspension Bridge and Woodhaven, Queens county), the latter part of the act reading thus: "Or on such streets and avenues as may be named by the mayor and common council of the city of Brooklyn, as being more suitable for carrying out the objects contemplated in the erection of said railway." The common council claim the right, under the last clause of the above section of the charter, to pass the resolution which in effect authorizes an elevated railroad to be constructed upon Fulton street and Myrtle avenue, and several other streets not named in the said act of incorporation. They claim to exercise such a power nearly eight years after the corporate franchise was granted, and a considerable time after the railway company had appropriated the streets named in its charter to its corporate uses. An injunction is sought by the plaintiff, who sues in behalf of himself and others similarly situated, to restrain such proposed action of the common council.

It is too late to deny the power of the court to prevent the commission of illegal acts by the members of the common council in a proper case and at the suit of proper parties. The members of the common council are mere agents with defined and limited powers (1 *R. S.*, 337, *sec.* 22; *Id.* 599 *secs.* 1 *and* 3). While the court cannot rightfully control the proper exercise of the discretion invested in them, yet when they threaten an abuse or illegal exercise of such discretion, and especially when they claim the right to exercise powers which they do not possess, it is the duty of the court to interpose its authority whenever it becomes necessary for the protection of public or private rights or interests. The action of the common council which the plaintiff asks the court to restrain, if unauthorized, must result in the creation of a public as well as private nuisance, for no argument is necessary to show that such an interference with a street as would follow from the construction and operation

thereon of an elevated railroad for the transportation of passengers and merchandise by means of steam power, would detract from the ordinary uses of the street and disturb the comforts of the citizens whose houses abut thereon, and if done without legal authority would be a nuisance *per se.* The right to interfere with streets exists only under statutes which confer the authority expressly or by clear implication. The right of the plaintiff, therefore, to maintain this action rests (1) upon the familiar principle that one who will be especially injured by the creation of a public nuisance may invoke the interposition of the court to prevent it; (2) upon that provision of the charter of the city of Brooklyn which makes the aldermen the trustees and resident taxpayers *cestuis que* trustee in respect to the property intrusted to the care of the former (*title* 19, *sec.* 20); and (3) upon the act of 1881, chapter 531, which expressly authorizes the prosecution of all officers, agents, &c., acting on behalf of any municipal corporation, by taxpayers by action to prevent any illegal official act. The principle stated is well established independently of any statute (*Hodges* agt. *City of Buffalo,* 2 *Duer,* 110; *Davis* agt. *Mayor,* 1 *Duer,* 451; 14 *N. Y.,* 510; *Rosevelt* agt. *Draper,* .*Id.,* 318; *Ayres* agt. *Lawrence and another, Com.,* 59 *N. Y., and cases cited; Demarest* agt. *Wickham,* 63 *id.,* 320; *Dill. Mun. Corp., sec.* 922, *and cases cited*). I pass by the allegations of fraud and corruption contained in the complaint. They are vague and indefinite, and are made upon information and belief only. They are denied by the affidavits of persons who must have been privy to the fraud or corruption, if any had existed. Whatever unfavorable impressions may be drawn by private persons from the character or conduct of the individuals assailed, the court can act only upon evidence sufficient to prove the facts alleged. The allegation that a large sum had been offered for the privileges conferred by the resolution in question is of no legal significance, for the reason that the common council had no power to accept the offer. The right to dispose, by special

grant, of the use of the streets of the city to railroad corporations without the consent of owners of the property thereon, no longer exists in the common council or in the legislature.

The decisive questions, therefore, are : 1. Whether the common council can exercise the power claimed, assuming its existence, in the mode adopted by them ? and, 2. Whether the power originally granted is still in force ? Both questions must, I think, be answered in the negative. The power forms no part of the mass of legislative powers which have been delegated to the common council by the city charter, but is a special authority conferred upon the mayor and common council by the statute incorporating the railroad company (*See Matter of North* agt. *Cary*, 4 *N. Y. Sup. Ct.* [*T. and C.*], 357; *New York and Brooklyn Saw Mill Co.* agt. *City*, 71 *N. Y.*, 580). The statute plainly requires the consent of both. The unanimous consent of the common council would not be an effectual execution of the power, much less would the consent of two-thirds of the members thereof, however manifested. Nor was the exercise of the power committed to a single board composed of the mayor and common council. But if such was its nature, it could be exercised only upon a meeting of all or a meeting of a majority upon due and reasonable notice to the others (2 *R. S.*, 555, *sec.* 27; *People* agt. *Nichols*, 52 *N. Y.*, 481). Upon either view of the subject the proposed action of the common council would be illegal. I am also clearly of opinion that the power has ceased to exist. It was conferred in 1874. The company has erected portions of its road and partially completed the same throughout the route designated in its charter, and on the 1st of September, 1879, mortgaged its railroad constructed, or to be constructed, including all the railways, ways and rights of way, acquired or to be acquired. Whatever has been done by the company toward the construction of its road has been done upon the streets named in its charter, and each of such streets has to a greater or less extent been

used by the company for the purposes of its incorporation. In September, 1880, the company was adjudged to be insolvent, and receivers were appointed of all its property, franchises and effects. The authorities of the city acquiesced in the use of the streets designated in the charter of the company, and neither the company nor the mayor or common council intimated in any manner that the streets so designated were not the most suitable for the objects contemplated by the legislature. I think, therefore, that the company elected to adopt the route designated in the charter, and that the mayor and common council have acquiesced therein. Such election has barred all parties concerned, and has put an end to the power to change the route so designated. The power to change the route was also annulled by the amendment to article 3 of the constitution, which took effect January 1, 1875. It matters little by what name the act of "naming streets more suitable" may be called. The legal effect of such an act would be to grant to the railroad company rights which it does not now possess, namely, a right to lay down railroad tracks, and also an exclusive privilege to operate a railroad thereon. That would be a plain violation of section 10 of said article 3. The legislature itself now possesses no power to make such a grant. That was abrogated by the constitutional amendment. The power of the common council, being derived from a legislative act, is, so far as the same remains unexecuted, also abrogated, for a derivative power cannot survive an original power. The effect here given to the amendments of the constitution has been declared in several decisions of the court of appeals. In *Falconer and another* agt. *The Buffalo and Jamestown Railroad Company* the issue of bonds in aid of the construction of a railroad under the town bonding act of 1869, was arrested because the condition upon which the right to the bonds depended, namely, the construction of the railroad through the village of Jamestown had not been fully performed when the amendment took effect.

Judge FOLGER, in delivering the opinion of the court, said : " It is not to be questioned that as soon as they (the amendments)˙ become a part of the constitution all action of towns not yet finished toward the issue of bonds, in aid of any corporations, at once fell to the ground, unless there had, by operation of law, or in pursuance of some authorized and valid agreement, been created a right to have such action perfected by the issuing of bonds." The same principle was decided in the case of the *People ex rel. Hetfield* agt. *The Trustees of the Village of Fort Edward* (71 *N. Y.*, 28). *In the Matter of the New York Elevated Railroad Company* (71 *N. Y.*, 327–349), the same court held that " where a special act was passed prior to 1875, creating a private corporation, an act to amend its charter would be a private one, and it could not, therefore, grant the right to lay down railroad tracks, and that nothing could be done by the legislature under the power to alter acts of incorporation, which it could not constitutionally do by an original bill." The successive extensions of the time limited by the charter of the company for the commencement or completion of its road, therefore, while they may have been operative as waivers of the forfeiture, do not continue in the mayor and common council the power to authorize the company to construct its road upon streets not designated in its charter. Furthermore, the power granted was not one which authorized an extension of the original grant contained in the charter of the company, by the addition of other streets to those designated thereon. On the contrary, it gave to the company merely the alternative right of using those streets or others in lieu of them. The proposed resolution is, in my judgment, plainly · illegal, in that it permits the company to use the streets named in its charter, and many others, and thus established additional routes not intended by the legislature. For instance, the company, if the action of the common council should become effectual, would acquire under a grant of the right to construct and operate a railroad from the East river bridge to

Woodhaven, the right to construct one from Adams street, through Myrtle avenue and Broadway, to another terminus at the ferry at the foot of the latter street. Other like instances might be mentioned. Such a palpable perversion of the grant would have to be condemned, even if the power claimed by the common council were still in force. Finally, the action of the common council would be ineffectual for lack of power in the receivers of the railroad company to accept the new privileges or franchises which the common council purpose to confer. The mortgage of its property and franchise before mentioned is in process of foreclosure. No power was conferred upon the receivers by the orders appointing them, to obtain or accept the extension of the company's franchises proffered by the common council. Receivers appointed *pendente lite*, except in cases (of which this case is not one), where by statute they are made assignees, have no powers which have not been conferred upon them by the order for their appointment. They are officers of the court, and their duty is merely to protect the property or fund during the litigation. Their acts are the acts of the court when duly sanctioned, but when not so sanctioned they have no greater effect than the acts of other unauthorized officers or agents (*Foster* agt. *Townsend*, 68 *N. Y.*, 206; *Keeney* agt. *Home Ins. Co.*, 71 *id.*, 396; *Finke* agt. *Finke*, 2 *Dept. MSS. and cases cited*). The receivers, in their affidavit, which was read in opposition to this motion, set forth that the decree in the foreclosure suit referred to is about to be entered, and that a reorganization of the railroad company has been agreed upon, which reorganized company will be abundantly solvent. The long and short of the matter in hand then is, that the object of obtaining the proposed extension of and addition to the route of the railroad was that the purchasers of the property and franchises of the railroad company might organize a new corporation, and so make the new franchises available for their benefit, as well as the old ones, and this was to be accomplished through the action of officers

Negus agt. City of Brooklyn.

of this court. It is enough to say that the court has not sanctioned, and is not likely to sanction, the acquisition of privileges or franchises for the benefit of creditors of insolvent corporations at the expense or to the detriment of any citizen. It was urged on the argument that an injunction should not be issued to restrain the passage of the proposed extension, because if it should be illegal it would be void, and, therefore, no injury could result therefrom to the plaintiff. The answer is that the resolution would give a colorable authority, to resist which would require a multiplicity of suits.

I think the injunction should be continued in such form as to effectually restrain the passage of the proposed resolution and the exercise in any manner of the power of naming more suitable streets, which was granted by the charter of the railroad company, and that the plaintiff should have ten dollars costs of this motion.

NOTE. — Despite the order of judge GILBERT continuing the injunction, tne seventeen aldermen who adopted the resolution passed the same over the veto of the mayor. Proceedings were taken and an order obtained by Mr. David Barnett, counsel for the property owners, requiring the seventeen aldermen to show cause why they should not be punished for contempt. After a hearing of both parties, judge GILBERT imposed a fine of $250 upon each of the aldermen, and from ten to thirty days imprisonment in the county jail. An appeal has been taken by the counsel of the aldermen and a stay has been granted, and the aldermen released from jail. — [ED.