## NEWMAN ET AL. v. BULLOCK.

| | |
|---|---|
| 23 | 217 |
| 25 | 36 |
| 23 | 217 |
| 28 | 417 |
| 23 | 217 |
| 31 | 467 |
| 31 | 473 |
| 23 | 217 |
| 37 | 421 |

1. CONTEMPT.

A refusal to obey a void decree does not constitute a contempt of court.

2. JURISDICTION.

Jurisdiction includes not only the power to hear and determine, but also the power of the court to render the particular judgment in the particular case.

3. SAME.

The validity of a judgment depends upon the court's jurisdiction of the person, of the subject-matter and of the particular issue it assumes to decide.

4. SAME.

A court cannot go beyond the issues and pass upon a matter which the parties neither submitted nor intended to submit for determination.

5. SAME—MISRECITAL IN RECORD.

A misrecital in the record as to the relation a party bore to the case—as that he was a defendant when he appeared in obedience to a writ

to answer a petition in intervention, but resisted a claim by the plaintiff—is not fatal to the decree.

6. SAME—PRACTICE—INTERVENTION.

Neither the intervenor nor the party answering his petition should be permitted, over objection, to change the issues of the main case, but if not made in the trial court in apt time the objection is waived, and an adjudication of such new issues may be had.

*Error to the District Court of Arapahoe County.*

*Proceedings in Contempt.*

IN JANUARY, 1894, in the district court of Arapahoe county, the defendant in error filed his petition, naming as respondents the plaintiffs in error, Charles Newman and William L. Stephens, as president and secretary respectively of The Swansea Gold and Silver Mining Company, in which he asked that they be declared guilty of contempt for failure to comply with a judgment theretofore (in 1889) rendered against the said company, directing the officers thereof to issue to the petitioner a certificate for six thousand shares of the capital stock of said company.

To this petition the respondents at various times interposed a number of objections in the way of motions to quash and demurrers, and it was not until the following September that the respondent Newman filed his answer to said petition, which, in substance, is the same as the answer of his corespondent Stephens, which was filed in the latter part of the previous January.

A demurrer by the petitioner to these answers, upon the ground that they did not constitute a sufficient excuse for a failure to comply with the said judgment, was sustained by the court, and the respondents, electing to stand by their answers, were thereupon by the court declared guilty of contempt, and ordered within a specified time to issue to the petitioner the certificate of stock in controversy, and upon a failure to do so it was ordered that they and each of them should be imprisoned in the county jail of Arapahoe county until they complied with the order.

From the answers of the respondents and the other pleadings in this proceeding the following facts appear: In the year 1881 there was incorporated under the laws of this state The Marrs Consolidated Mining Company. Of its capital stock a certificate for six thousand shares was issued and delivered to one George W. Middleton. Thereafter, the defendant in error, R. S. Bullock, as trustee, became the owner of said certificate by assignment, but failed to secure a transfer of the stock upon the books of the company within sixty days after the assignment, as the statute of this state requires. Gen. Stats. 1883, sec. 269; Mills' Ann. Stats., sec. 508.

About this time the name of the company was duly changed to that of " The Swansea Gold and Silver Mining Company." The officers of the company questioned the validity of this certificate; they refused on that ground to make the transfer and exchange desired by Bullock, and requested him to bring a suit against it to determine the legality of the same, which he did not do. Before any transfer was made, various suits were brought against Middleton and others, and in aid thereof attachments were issued and the writs levied upon this stock; the creditors asserting that it was the property of Middleton, standing, as it did, on the books of the company in his name for more than sixty days after the assignment by him. Judgments in some of these suits were duly rendered, and executions were sued out and delivered to the sheriff of Arapahoe county, who, in pursuance of the commands of the writ, threatened to sell this certificate and the stock represented thereby as the property of Middleton.

Thereupon the defendant in error here, claiming to own said certificate of stock, as trustee, brought his action in the district court of Arapahoe county to establish his ownership of the stock, and to restrain the sheriff from making sale thereof as the property of Middleton. All of the attaching creditors were not made parties defendant to the suit. During the pendency thereof, the State National Bank of Denver and others, attaching creditors, asked leave of the court to intervene. Permission was granted, and in its petition the

bank claimed an interest in the subject-matter of the litiga-
tion adverse to both of the parties,—that is, it claimed that
the stock in controversy belonged to Middleton and not to
the plaintiff, and that its lien, by virtue of the levy of its
attachment writ, was superior to the lien of the attaching
creditors who were made parties defendant in the original
action. In this petition the bank asked that the Mining
Company and Middleton be brought into court to answer its
petition of intervention, to the end that the entire controversy
touching " the date, number and ownership " of the certificate
be determined.

Middleton was not made a party, or brought in to answer
the petition of the bank; but process was served upon the
Mining Company, and in response thereto it appeared and
made answer to the bank's petition, in which, among other
things, it alleged that it was unable to determine for itself
whether the certificate in controversy was, or was not, valid.
It denied any knowledge as to the ownership of such certifi-
cate, and disclaimed any ownership or interest therein; and
it asked that all of the parties in any way interested in the
ownership or validity of the certificate be brought in and
their rights determined.

Bullock, the plaintiff in the action, also filed an answer to
the bank's petition denying Middleton's ownership of the
stock in question, and denying also that the bank had any
interest therein, either by virtue of its attachment or other-
wise. None of the original parties to the action, either plain-
tiff or defendants, made any objection to the filing of the
petition by the bank, or to the answer thereto interposed by
the Swansea Mining Company.

In this state of the pleadings, the action proceeded to a
hearing before the court and findings of fact were made to
the effect that Bullock was the owner of the certificate of
stock in controversy, that the same was a valid and legal cer-
tificate, and the shares thereby represented were legal and
valid shares, of the capital stock of said Mining Company;
upon which findings a decree was entered adjudging and

establishing Bullock's ownership of said stock, and enjoining the sheriff from making a sale thereof as the property of Middleton. The decree further provided and directed that the officers of the Mining Company, within a time fixed in the decree, upon the production and delivery to them of the original certificate by Bullock, issue to him, in lieu thereof, a certificate of the capital stock of The Swansea Gold and Silver Mining Company for six thousand shares.

In the decree are found these recitals: "This cause coming on this day to be heard upon the issues joined herein between the said plaintiff and the defendants * * * The Swansea Gold and Silver Mining Company * * *." "And the court having read and considered the pleadings filed herein, and having heard and considered the testimony and depositions of witnesses on behalf of the parties hereto, and the arguments of their respective counsel, and being fully advised in the premises, doth find," etc.

An appeal by some of the defendants in the original action (but in which the Mining Company did not join) was perfected to this court, and the judgment was thereafter, in October, 1893, affirmed. *Weber et al. v. Bullock*, 19 Colo. 214.

Mr. CHARLES H. TOLL and Mr. WM. R. BARBOUR, for plaintiffs in error.

Mr. LAFE PENCE, Mr. J. S. McGINNIS and Messrs. SULLIVAN & MAY, for defendant in error.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

In the answers of the respondents it is averred that upon the trial of the original action there was no issue joined, either as between Bullock, the original plaintiff, and the Swansea Mining Company, or as between the original defendants in that action and said company, or as between the State National Bank, as intervenor, and the said company, as to the validity or genuineness of the certificate of stock in con-

troversy, or the shares represented thereby, otherwise than as appears from the pleadings filed in that case, an abstract of which has been set out. For this reason it is urged that, inasmuch as it is said that no issue was joined thereupon, the decree of the court, in so far as it purported to establish the validity of the stock, and to order the officers of the company to issue a new certificate in lieu thereof, was absolutely void. Upon this theory it was that respondents, under advice of counsel, refused to comply with said judgment; and this is the point upon which they chiefly rely here. There are some other objections, more or less of a technical nature, interposed by them upon which errors have been assigned and argued, but we consider none of them of sufficient merit to demand a consideration. We proceed, therefore, directly to a consideration of the main, and the only important, question involved in this controversy.

If this decree is void, respondents were not guilty of contempt of court in refusing to obey it. *Smith v. The People*, 2 Colo. App. 99; Rapalje on Contempts, sec. 33. The decree shows upon its face that the matters adjudicated were such as come within the general jurisdiction of district courts in this state. If they were really in issue in the case, or so treated and litigated, or the parties were actually heard upon them, the decree is presumptively valid, as it recites that those affected were before the court as parties to the action. The various infirmities rendering the decree void, said to be apparent from an inspection of the record set out in full in these proceedings, we now proceed to consider.

It is safe to say that the tendency of the later authorities, especially in the federal courts, is to enlarge the definition of jurisdiction to make it include not only the power to hear and determine, but also the power to render the particular judgment in the particular case. In other words, "In order to the validity of a judgment, the court must have jurisdiction of the persons, of the subject-matter, and of the particular question which it assumes to decide." "Neither can it go beyond the issues and pass upon a matter which the par-

ties neither submitted nor intended to submit for its determination." 1 Black on Judgments, secs. 215, 242; *Johnson v. Johnson*, 20 Colo. 143; 12 Am. & Eng. Ency. of Law, 247, note 1, *et seq.*; *Munday v. Vail*, 34 N. J. Law, 418; *Reynolds v. Stockton*, 140 U. S. 254.

This being so, it is said that the court exceeded its jurisdiction in rendering judgment against The Swansea Gold and Silver Mining Company in favor of the plaintiff Bullock, *first*, because it was not a party to the action; *second*, because the subject-matter in dispute between plaintiff and the defendants in the main action was the ownership of a certificate of stock, and no other or different issue, such as the validity of that certificate, could be thrust into the case, either by the intervenor, or the Mining Company in its answer to such petition of intervention; *third*, as a matter of fact, no issue touching the validity of the certificate was presented in the case, either as between the Mining Company and the plaintiff Bullock, or as between the original plaintiff and the defendants, or the Mining Company and the intervenor, or by any of the parties to the action.

If either of these contentions is borne out, it follows that the decree is void. But the claim of the plaintiffs in error rests purely upon assumption. Though averments to the above effect are in their answers, they are but conclusions of law of the pleaders and are contradicted by the facts alleged in the same pleadings. The appearance of the Mining Company was in obedience to a writ to answer the petition of intervention of the bank. The recital in the decree that it was a defendant in the action is, therefore, not strictly correct in the sense that it was one of the original defendants. In the sense, however, that it made a claim antagonistic to the plaintiff, as to him it sustained the relation of a defendant.

Be this as it may, the record does show that it was a party to the action, and a mere misrecital in the decree as to the true relation which it bore therein—so long as it was in fact a party, and in substance was a defendant resisting some-

thing claimed by the plaintiff in the case—is not fatal to the decree.

We may concede that the issue joined between the plaintiff Bullock and the defendants was over the ownership of a certificate of stock, and that a new or different issue cannot be introduced into a cause by a petition of intervention, and that said new issue, if it was present at all in the case, was brought in by the Mining Company in its answer to the petition of intervention filed by the bank, and that it was, in fact, an issue different from that in the main action. If a proper objection had been seasonably interposed, neither the intervenor nor the one answering to its petition of intervention could have been permitted to change the issues joined in the main action. *Van Gorden v. Ormsby Bros. et al.*, 55 Iowa, 657; *Mayer v. Stahr*, 35 La. Ann. 57; 17 Am. & Eng. Ency. of Law, 646, *et seq.*

But if such new issue is of such a nature that in a proper case it comes within the jurisdiction of the court, if no objection in the lower court is made by any of the parties concerned to its introduction into the case, no such objection can thereafter be made or raised upon a direct review of the judgment, much less upon a collateral attack by the very party who tendered the issue. *McKenty v. Gladwin*, 10 Cal. 227; *Smith v. Penny*, 44 Cal. 161; *People v. Reis*, 76 Cal. 269; *Sanxey v. Iowa City Glass Co.*, 63 Iowa, 707; 17 Am. & Eng. Ency. of Law, 648.

We come now to the crucial question in the case. Counsel ingeniously argue that the question of the validity of the certificate was not, as a matter of fact, mooted in the pleadings, or litigated by the parties. As we understand them, their argument is that in its answer to the bank's petition the Mining Company did not expressly or positively allege that the certificate was, or was not, invalid, and there was no denial or response of any kind by any of the parties to its answer; therefore, there was no issue raised touching the genuineness of this certificate.

Ordinarily an issue of fact is raised by an allegation in one

pleading and a denial in another; but an issue may be presented without a denial. For example, an allegation of partnership in a complaint brought to dissolve the copartnership presents an issue which the court may determine, though no denial of that allegation is found in the answer. So here, when the Swansea Company presented for determination the subject-matter of the validity of this certificate, the mere fact that no denial was made by any other party does not eliminate that point from the case. Up to the time of the filing of the answer by it to the bank's petition, the only issue before the court was that of ownership. But the Mining Company, when summoned in, voluntarily raised another and different issue and expressly asked the court to determine it. It made no claim for itself, or in behalf of any of its stockholders, or in favor of any other party, of ownership of the stock in controversy. But for years it had refused to issue in lieu thereof another certificate in the new name of the company upon the admitted ground that its officers could not, with safety to themselves or in justice to the stockholders, issue such certificate, without having its validity adjudicated in a proper proceeding by a court of competent jurisdiction. To end all such controversy, it therefore in this proceeding, perhaps somewhat irregularly,—and had a proper objection been made by an interested party, possibly the attempt would have been unsuccessful,—asked the court to determine this question for those interested therein. No other pleadings by the other parties were necessary, and if no objection was made (as there was not) the court might properly adjudicate upon the matter submitted. That he did so is apparent from the record of that case.

True it is that there is no express recital in the decree that evidence was heard as to this particular question of validity; but the decree recites that the parties, including the Swansea Mining Company, appeared at the hearing, and evidence was offered by the parties to the action upon the issue joined, and findings were made both as to the ownership and validity of the stock in controversy. It appears, therefore, that the parties

had an opportunity to be heard, and in fact were heard, upon the question of the validity of the stock, treated the same as an issue in the case, and as though it was in the pleadings.

In speaking of that section of the federal constitution which provides that "full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state," Mr. Justice Brewer, in the case of *Reynolds v. Stockton, supra*, says : "The requirements of that section are fulfilled when a judgment rendered in a court of one state, which has jurisdiction of the subject-matter and of the person, and which is substantially responsive to the issues presented by the pleadings, or is rendered under such circumstances that it is apparent that the defeated party was in fact heard on the matter determined, is recognized and enforced in the courts of another state."

That this issue as to the validity of the stock was not only raised by the pleadings, but that the Mining Company and the other parties were in fact heard on the matter determined, and that the judgment was fairly responsive to such issues, we have no doubt.

The judgment is therefore affirmed.

*Affirmed.*