[No. 4600.]

TEBBETTS ET AL. V. THE PEOPLE EX REL. SPRAGUE.

[No. 4599.]

WRIGHT V. THE PEOPLE EX REL. SPRAGUE.

1. **Contempt—Criminal—Jurisdiction.**

When the sole object of the prosecution and judgment in a contempt proceeding is to preserve the authority and power of the courts and to punish a disobedience of their orders, in order to vindicate the rights of the public, and not· for the protection or enforcement of the rights of an individual litigant, the contempt is criminal and the supreme court has jurisdiction to review the judgment therein without regard to whether or not any of the questions are involved which would give the court jurisdiction in civil cases.

2. **Same—City Council—Ordinances—Injunction.**

Where an injunction was issued to restrain a city council from passing an ordinance, upon the petition of one who had no private interest in the matter, the purpose of which was to prevent an alleged threatened public wrong, a proceeding in contempt against the members of the council for violating such injunction is one for criminal contempt.

3. **Injunction—Jurisdiction—Contempt.**

The disobedience of an injunction issued ·without jurisdiction does not constitute a contempt of court.

4. **Municipal · Corporations—Legislative Powers—Injunction— Jurisdiction.**

Courts of equity have no power to prohibit by injunction the

acts of legislative bodies of municipal corporations, legislative in their character, or which involve the exercise of a discretion, where the only ground upon which it is attempted to control these functions in advance is one of expediency.

**5. Same—Street Railways—Franchises.**

The courts have no power to inhibit by injunction a city council from passing an ordinance granting to a street railway company a franchise to construct and operate a railway over certain streets or compel the ordinance to be amended so as to limit the extension of the franchise so that it would expire at the same time other franchises held by the company over other streets of the city would expire, on the ground that it is contrary to public interest to grant a franchise for a longer period, and the members of a city council are not guilty of contempt of court for violating such an injunction.

*Error to the District Court of Arapahoe County.*

Plaintiffs in error are respectively members of the board of aldermen and mayor of the city of Denver. The defendant in error, Wellington G. Sprague, brought an action against them in their official capacity in the district court of Arapahoe county, the purpose of which was to restrain the aldermen from passing, and the mayor from approving, an ordinance then under consideration by the board granting to The Denver City Tramway Company certain rights, unless amended in particulars specified in the complaint. The statements in the complaint upon which this relief was sought are substantially as follows: The tramway company is the owner of franchises theretofore granted authorizing the construction of street railways in the city of Denver, and is engaged in operating a railway over such streets. The ordinance in question proposed to grant a franchise over other streets upon which a street railway might be constructed which would connect with the system then being operated by the tramway company, or enable it to operate a line over a different route from that now in use; that the franchises already granted

would expire in eight or nine years, and that the ordinance proposed granted a franchise for the new lines for a period of twenty years; that at the expiration of the present franchises under which the tramway company is operating its railway system the city would have the right to take over the lines of railway constructed under the authority thereby conferred and operate them on its own account, or dispose of the same to others; that this right was of great value, and that the purpose of the ordinance is to enable the tramway company to hinder the taking over of its present system by the city or obtaining either from the company, or others, adequate compensation for the use of the streets for railway purposes, or the extension of the present franchises now held by the company. The proposed ordinance is set out at length in the complaint, by the terms of section 4 of which it is charged that the proposed ordinance will operate as a surrender of the right of the city to regulate fares not only on the lines which may be built under such ordinance, but also on all lines theretofore constructed. It is also charged that by the proposed ordinance the city does not reserve the right to pass such general ordinances as may be necessary to secure the comfort of the inhabitants of the city and the control of the streets upon which such lines may be operated. While of no particular moment, it is not amiss to add that the ordinance limits the right of the tramway company to construct and operate street railways to particular streets, one commencing at the intersection of Franklin street and Thirty-fourth avenue, thence extending easterly on that avenue to Frank street; the other beginning at Downing street and Fourth avenue, then along streets named to the intersection of Mississippi and University avenues. The particularly objectionable features of the proposed ordinance, according to the averments of the

complaint, are summarized in paragraph 19 as follows:

"That the property rights and interests of the city are involved in the proposition to grant said franchise for the term of twenty years; that the granting of franchises for extensions for a longer period than the connecting lines, or lines to be extended have franchises for, tends greatly to reduce the value of the city's interest in property in the streets, and rights to take over the said railway lines which it now has, and that such a grant is therefore an injury to every taxpayer, and as such, is an injury and damage to this plaintiff, all of which is well known to the said defendants, but that nevertheless, the said defendants, combining and conspiring and confederating with the said tramway company, its officers and agents, threaten and declare that they will pass the said ordinance without requiring the same to be amended with respect to the said section 4, or without requiring to be inserted therein a clause reserving to the council the right to pass such ordinances as the comfort of the inhabitants of the said city may require, and without changing the term of said franchises from twenty years, so that the franchise on the respective lines thereby permitted to be built shall expire at the same time as the franchises for the lines with which they respectively connect; and that plaintiff is remediless according to the strict rules of the common law, and has no recourse except to a court of equity, where matters of this kind are properly cognizable."

The prayer for relief was to the effect that pending the final hearing of the cause, the aldermen be restrained from passing the ordinance in question unless section 4 was eliminated, or amended so as to apply only to the lines of railway to be built under such ordinance, and from attempting to pass any bill

or ordinance which undertook to give the tramway company the right to "receive five cents and no more for a single passage on any line of said company's railway, within the city of Denver," and from passing such ordinance unless amended so that the term and time of the franchise thereby granted shall expire coincident with the time when the franchises for the lines of street railway of the tramway company with which the lines to be constructed under such ordinance will intersect or connect, will expire, and that the mayor be enjoined and restrained from approving such ordinance unless amended in conformity with such prayer. An injunction issued in conformity with the prayer, and was served upon the aldermen and mayor. They proceeded, after service, respectively to pass and approve the ordinance without any change. Thereafter such proceedings were had that they were adjudged guilty of contempt and sentenced to imprisonment in the county jail. They bring these judgments here for review on error.

Mr. H. M. ORAHOOD, Mr. H. L. RITTER, Mr. L. M. GODDARD and Messrs. HELM & DIXON, for plaintiffs in error.

Messrs. PATTERSON, RICHARDSON & HAWKINS, for defendants in error.

Mr. JUSTICE GABBERT delivered the opinion of the court.

Counsel for defendants in error urge upon our attention at the outset, that this court is without jurisdiction to entertain these cases, for the reason that the contempts of which plaintiffs in error were adjudged guilty are civil, and not criminal, in their nature. This is an important question, because under the act regulating the jurisdiction of this court to review causes on appeal or error, it has no jurisdiction

to review judgments in civil contempts in the absence of conditions or questions involved by virtue of which jurisdiction would attach as in other civil proceedings brought here for review either on appeal or error. The line dividing criminal from civil contempts is often indistinct, and in some respects the cases are not altogether harmonious on the subject, so that it would be difficult to formulate any rule under which the two classes could always be distinguished, because in many instances the two gradually merge into each other. The authorities, however, appear to agree that proceedings in contempt are criminal in their nature when the sole object of the prosecution and the judgment pronounced against one adjudged guilty of contempt is to preserve the authority and power of the courts, and to punish a disobedience of their orders, in order to vindicate the rights of the public, and is in no sense for the protection or enforcement of the rights of an individual litigant.— 7 Enc. of Law, 2 ed. 28; *People ex rel. v. Court,* 101 N. Y. 245; *In re Nevitt,* 117 Fed. 448.

Under this rule it is clear that plaintiffs in error were prosecuted for and found guilty of a criminal contempt. The plaintiff in the original action out of which the proceedings in contempt arose had no private interest in the subject-matter of controversy. His interest was the same as that of every other citizen of the city of Denver. The purpose of his action was to prevent what he conceived to be the perpetration of a threatened public wrong by the mayor and aldermen. The object of the judgments in contempt was not to protect his interest, but solely to punish the plaintiffs in error for a disobedience of the process of the court, thereby vindicating its authority in a manner which would operate to prevent the commission of the offense by others.

The important question in the case is whether

the district court was vested with jurisdiction to issue
the injunction for the violation of which the plain-
tiffs in error were adjudged guilty of contempt, be-
cause, in the absence of such jurisdiction, the writ
of injunction was void, and the disobedience of an
injunction granted without jurisdiction does not con-
stitute a contempt of court.—*Newman v. Bullock*, 23
Colo. 217; *Smith v. People*, 2 Colo. App, 99; 7 Enc.
Law, 2 ed. 57.

The purpose of the action instituted by plaintiff
in which the injunction was issued was to prevent
the passage of an ordinance unless amended in the
particulars specified. It was not claimed in the
complaint that the aldermen had no authority to pass,
or the mayor to approve, such an ordinance, or that
in so doing they would violate a trust, or that if the
ordinance was for any reason illegal, it could not be
successfully attacked after passage. On the con-
trary, the sole reason deducible from the complaint
why they should be enjoined, was, that in the judg-
ment of the plaintiff the ordinance was impolitic,
and that the interests of the city would be better
served if the ordinance was amended in the partic-
ulars pointed out. It will thus be seen that the only
difference between plaintiff and the aldermen and
mayor with respect to the ordinance in question was
one of judgment. In other words, while the plaintiff
did not question the authority of the aldermen and
mayor to pass and approve the ordinance in question,
impugn their motives, or state any facts from which
it would appear that if the ordinance for any reason
was illegal, its enforcement could not be arrested,
he assumed that in his judgment the aldermen and
mayor were not acting wisely, and therefore should
be inhibited from passing and approving the ordi-
nance unless it comformed to his notions with respect
to matters which it embraced. Inasmuch as the au-

thority of the plaintiffs in error to pass and approve the ordinance is not questioned, we shall assume, for the purposes of these cases, that in framing its provisions they were exercising a discretionary power vested in them by law. Whether, in passing and approving the ordinance the aldermen and mayor were exercising legislative or contractual functions, or both, is immaterial, for the authorities are unanimous that the exercise of functions within the scope of their authority by local legislative bodies of municipal corporations, legislative in their character, or which involve the exercise of a discretion, cannot be directly controlled by the courts, where, as in this instance, the only ground upon which it is attempted to control these functions in advance is based upon the proposition that the action which it is sought to arrest is unwise or impolitic; or, briefly, when the only question is one of expediency, a court of equity is without jurisdiction to inhibit the action of local legislative bodies of municipal corporations.—*Lewis v. Water Works Co.,* 19 Colo. 236; *New Orleans W. W. Co. v. New Orleans,* 164 U. S. 471; *Stevens v. St. Mary's School,* 144 Ill. 336; *Bond v. Mayor of Newark,* 19 N. J. Eq. 376; *Cape May & S. L. R. R. Co. v. City,* 35 N. J. Eq. 419; *State ex rel. Rose v. Superior Court,* 105 Wis. 651; *Des Moines G. Co. v. City,* 44 Iowa 505.

Any other rule would be subversive of our system of government. The general assembly has empowered the local legislature of the city of Denver of which plaintiffs in error are members, to pass ordinances of the character in question, as well as others intended for the government and control of municipal affairs.

In passing and approving the ordinance in question the plaintiffs in error were required to exercise their own judgment and discretion, and not the judg-

ment and discretion of another branch of the government, and yet, if the injunction should be upheld, it must be upon the theory that the judicial department had the power to strip the plaintiffs in error of the authority conferred upon them by law, and direct that its judgment and discretion be exercised instead of theirs. Such an assumption of authority would be the exercise of a power which the judicial department does not possess, and result, if upheld, in permitting that department to exercise legislative functions and supervise the making of laws, instead of confining it to its legitimate sphere, namely, construing and applying the law.

Counsel for defendants in error direct our attention to New York cases upon which they principally rely to support their contention that the judgment of the district court in adjudging plaintiffs in error guilty of contempt is correct. The first case we shall notice is *Davis v. Mayor,* 1 Duer 451, wherein aldermen were adjudged guilty of contempt because, notwithstanding the service of a writ of injunction commanding them not to pass an ordinance, they proceeded to do so. It appears from a reading of the opinion in that case, that the judgment of the court in finding the aldermen guilty was based upon the ground that if the court issuing the injunction had the power, under any circumstances to order the writ against the aldermen, then the fact that the complaint upon which it was based was insufficient, was immaterial. In other words, the court announced that unless it had no authority in any circumstances to enjoin the action of the aldermen, the writ was not void. That case subsequently was heard by the court of appeals—9 N. Y. 263—where the judgment was affirmed, practically upon the same proposition.

*Negus v. City,* 62 How. Pr. 291, was also a proceeding against the members of the common council

of the city of Brooklyn to restrain them from passing an ordinance. In that case it was declared, in substance, that while the courts had no power to directly control the exercise of the discretion of the common council, yet, when the members threaten an abuse or illegal exercise of such discretion, and especially when they claim the right to exercise powers which they do not possess, that the court had the authority to prevent such action, by injunction. The writ was issued and the council passed the ordinance. The members voting for its adoption, were found guilty of contempt. Their appeal from this judgment is reported in 27 Hun, 548, under title of *People v. Dwyer.* The opinion does not touch the subject of jurisdiction at all, for it appears that the aldermen undertook to excuse their conduct in disobeying the injunction upon the ground that in passing the ordinance which the writ prohibited, they were acting as agents of the state, and not on behalf of the city. The case was finally determined in 90 N. Y. 402, where the judgment adjudging the aldermen guilty of contempt in disobeying the injunction was affirmed upon the ground that whether the ordinance which they were prohibited from passing was or was not of a legislative character, or whether other facts upon which the court acted in issuing the writ justified the interposition of equity, were questions for the court to investigate, and it had the power to prohibit action until it could investigate and finally decide the question, and that therefore the remedy of the aldermen was by an appeal from the judgment in which the injunction writ was issued, and not by a disobedience of its mandate. It would seem, therefore, from a study of these cases, as finally decided by the court of appeals, and as reported in 1 Duer, that the decisions are based substantially upon the proposition that because a court

of equity in some cases might have the power to inhibit legislative action by a city council, it had general jurisdiction in such matters, or that a court of equity had the authority to decide whether the case made by the complaint entitled the plaintiff to a writ of injunction or not, and therefore its writ of injunction was not void, even though issued upon a complaint which did not state a case authorizing its issuance. These cases have been criticised by other tribunals, and the doctrine they announce repudiated. In *Alpers v. City,* 32 Fed. 503, Mr. Justice Field, in commenting on the Davis case, stated that in his opinion, a municipal body, clothed with legislative power, was not subject to the restraint and control of the courts the same as any other body, natural or artificial.

The supreme court of Illinois, in *Stevens v. St. Mary's Training School, supra,* also notices these New York cases, and concludes that the later decisions of the tribunals of that state have practically overruled them. While our attention is not directed to any particular New York case which in direct terms has overruled these cases, the subsequent decisions of the courts of that state to the effect that the functions of municipal authorities involving discretion, when that question alone is involved, cannot be directly controlled by the courts, have in reality overruled those cases, because if the courts have no jurisdiction to control discretionary acts in such circumstances, they have no authority to issue a writ of injunction for that purpose.

In *State ex rel. Rose v. Superior Court, supra,* the Wisconsin supreme court also takes occasion to notice that the later cases from New York seem to condemn the restraint of a common council by injunction, when acting within its power and discretion.

Our attention is also called to the fact that in *Lewis v. Water Works Co., supra,* language employed in *Davis v. Mayor, supra,* is quoted, to the effect that a court of equity may interfere with the legislative and discretionary power of a city council when it is necessary to prevent abuse, injustice, or the consummation of a fraud. While this quotation is made, it was not intended as an authority in support of the proposition that because in such circumstances it might be true that a court of equity would restrain by injunction the action of the legislative body of a municipality, that therefore the jurisdiction of a court, in an action to restrain such body, could not be collaterally questioned in any case, but rather for the purpose of leaving open the question as to when an injunction might lie to restrain action of municipal authorities. The distinction between a complaint which is merely defective, and one which does not state a case of which the court has jurisdiction, was discussed in *People ex rel. L'Abbe v. District Court,* 26 Colo. 386. In that case it was contended by counsel that because the district court was vested with general jurisdiction to issue injunctions, its right to exercise that power in a particular case could not be inquired into in a proceeding where the only question involved was its jurisdiction. This point was decided adversely to that claim, because, while the district court as a court of equity has jurisdiction to enjoin action, it has no authority to do so in a case which does not belong to the class in which it has jurisdiction to issue injunctive process.

Inferentially, the same distinction is made in *Frost v. Thomas,* 26 Colo. 223, and *Greenwood v. Routt,* 17 Colo. 157. Each of those cases was an action against the governor. In the first case he was required by mandamus to do an act which it was determined was merely ministerial. In the latter case

an injunction, the purpose of which was to enjoin
him from exercising executive powers, was refused.
Both decisions were based squarely upon the ques-
tion of jurisdiction; that is, in the former it was
held that the court has jurisdiction, while in the lat-
ter it was held that it had not.

Jurisdiction of a court of equity includes not
only the power to hear and determine, but also the
power to render the particular judgment in the par-
ticular case presented.—*Newman v. Bullock, supra.*
If the court does not possess such power as to the
subject-matter of the action, or the authority to ren-
der the particular judgment pronounced, then the
judgment rendered in either instance is without its
jurisdiction. We do not go to the full extent of hold-
ing that a court of equity may not in any case in-
hibit the action of a city council which involves leg-
islative or discretionary powers, for the obvious rea-
son that the case made by the plaintiff on the com-
plaint presented to the district court does not call
for a decision of this proposition. Conceding, for
the sake of argument, that in a proper case the dis-
trict court would have jurisdiction to prevent the
action of the council which involved the exercise of
legislative or discretionary functions upon its part, it
by no means follows that the jurisdiction of the court
to issue an injunction could not be inquired into collat-
erally in any case. Its jurisdiction to issue an injunc-
tion to restrain the city council does not depend upon
the sufficiency of the complaint under which it was is-
sued, but, rather, upon the question of whether or not
the case made or attempted to be stated belonged to
the class in which it could grant equitable relief
through injunctive process. That is to say, if it ap-
peared from the averments of the complaint that
the case did not belong to the class which, as a court
of equity, it could take cognizance of, and inhibit the

action of the city council, then it would be without jurisdiction, while on the other hand, if it appeared from the statements in the complaint to belong to the class of which it did have jurisdiction, then the issuance of a writ, although the facts stated might not be sufficient to justify such action, would be in a case of which it had jurisdiction, and its process would not be void. The purpose of the plaintiff in presenting his case was to control an exercise of legislative and discretionary functions of the plaintiffs in error, pure and simple. No attempt was made to state facts which invested the court to which the complaint was presented with jurisdiction to control these functions; so that the case in which the injunction issued was not one where the complaint was mere insufficient, but, on the contrary, the complaint did not attempt to state a case belonging to the class of which the court had jurisdiction to grant the relief prayed.

The judgments of the district court are reversed and the causes remanded, with directions to discharge the plaintiffs in error.

*Reversed and remanded.*