Reynolds, J.
This action is brought to enjoin the defendant, as receiver of the Mu tual Gras Light Company, upon the ground mainly that the right which said company had acquired of laying pipes through the streets of the city cannot pass to or be exercised by the defendant as such receiver. The theory of the plaintiff is that the permission to thus use the streets was a mere license, and could not be transmitted to any other corporation or person.
The company was organized under the general act passed in 1848, and the several acts amending the same. It is provided by section 18 of the original act that any corporation formed under the act shall have power to lay conductors for conducting gas through the streets, lanes, &c,, of the city, where the same shall. be located, with the consent of the municipal authorities of said city, and under such reasonable regulations as they may describe. The Mutual Gras Light Company obtained the requisite consent from the proper authorities of the city of Brooklyn, upon such terms as were agreed upon between it and them. The affidavits on the part of the plaintiff contain such statements designed tó show that the company did not comply with the terms of its agreement. The opposing affidavits tend to show that it did, except so far as its defaults might be excused. But the action is not *25 brought for the purpose of revoking the permission which was given, and it is clear that no such claim can be tried or judgment rendered in this action. The city has not signified its election, if it has the power, to put an end to the rights acquired under its consent. Such election must probably be made by the same authority as that which gave the consent, that is, by act of the common council (Brooklyn Central R. R. Co. v. Brooklyn City R. R. Co., 32 Barb. 358). Indeed, this claim was not pressed upon the argument, the plaintiff resting upon the ground already stated. It thus becomes important to inquire what rights the company had acquired by virtue of its organization under the statute and the consent given by the city. The permission given by the city, taken by itself, may be treated as, a mere license, but such permission alone would not give the right to use the streets for the purposes of the company, for the reason that the city has no such ownership in or dominion over the streets as would empower it to bestow any such privilege, except so far as the sovereign power had referred the applicant to it for its consent. The legislature, as representing the sovereign power, by general act granted the right to use the streets, subject to the condition of obtaining the consent of the local authorities. When this consent was obtained, the grant was perfected, and the company was vested with the right to use the streets, as a franchise conferred by the State. The Chicago City Railroad Company v. The People ex rel. Story (73 Ill. Sup. Ct. 541), was the case of a company incorporated by the legislature with the power to construct and operate a railway in a city, upon the consent of the city, in such manner and upon such condition as the city might impose, and the city by ordinance granted the privilege. The case was entirely analogous to the one in hand. The court held that while the city ordinance was a mere license, the *26 grant by the State was a franchise, which is said to be a privilege emanating from the government or sovereign power. Mr. Justice Scott says: “It is a misconception of the law to suppose the railway company derives its power to construct a railroad from any ordinance of the city. All its authority is from the State, and is conferred by its charter. The city has delegated to it the power to say in what manner and upon what condition the company may exercise the franchise conferred by the State, but nothing'more.” The case of the Brooklyn Central, or the Brooklyn City Railroad Company, already referred to, and the Jersey City Gas Company v. Dwight (29 N. J. Eq. 242), may both be cited as directly in point.
It will thus be seen that the right which the Mutual Gas Light Company acquired was something much higher than a mere license. Now, when we turn to the general act already referred to, we find that by section 2, as amended in 1872, the company organizing under it may, from time to time, borrow money for carrying on its operations, and mortgage the corporate pi'operty and franchises of said company, to secure the payment of any debt contracted by it for the purposes aforesaid. This was done by the Mutual Company, and if my reasoning is correct, the right to use the streets for the purpose of conducting gas was a part of the “property and franchises” mortgaged, and certainly a very essential part. This mortgage is being foreclosed, and in the action brought for that purpose in the supreme court, as well as in an action or proceeding for winding up the corporation, the defendant has been appointed receiver, with directions, among other things, to take charge of the laying of gas pipes through the streets. The regularity or propriety of this order cannot be reviewed here, nor does the defense depend upon the particulars alluded to. The defendant does not present himself as the grantee or *27 assignee-of the Mutual Gas Light Company (as was the case in the action lately before Chief Justice Neilson*). He is the receiver, pendente lite, of the company to' which the grant was made. The title to the property is not changed by the appointment. The receiver acquires only the right of possession as the officer of the court. The object of the appointment is to secure the property pending the litigation, so that it may be appropriated in accordance with the rights of the parties as they may be determined by the judgment in the action (Keeney v. Home Ins. Co., 71 N. Y. 396). The defendant, in the discharge of his duties, is under the direction of the court by which he was appointed. So far as the city is concerned, he represents the Mutual Gas Light Company. But, if the right to use the streets, when perfected by the consent of the city, is, as I have concluded, a franchise, the course of reasoning carries us still further. The power to mortgage this franchise involves the right to sell under foreclosure, and the right of the purchaser to use and enjoy. And to render this the more effectual, the legislature has enacted (L. 1873, c. 469, § 11) that whenever any corporation created by act of the legislature, or organized under any general act, shall be empowered by such act to mortgage its property and franchises, and its property and effects shall be sold by virtue of any mortgage executed by it, and" the purchaser or purchasers shall have acquired title to the same in the manner prescribed by law, such purchaser or purchasers, with his or their associates, may make and file articles of association as prescribed, and thereupon become a body politic and corporate, and take and receive a conveyance of and succeed to, possess, exercise and enjoy all the rights, powers, franchises, privileges, easements, liberties, property, &c., of which the *28 title shall have been conveyed as aforesaid. The section thus summarized is broad and entirely comprehensive of the matter under consideration. The franchise in question, with all other property of the company covered by the mortgage, may be sold under foreclosure in the action wherein the defendant has been appointed receiver, and the purchasers, with their associates, may organize a new corporation on the basis of such property and franchises, and enter upon their enjoyment, and that without any further consent from the city, because the franchise has already been perfected.
To my apprehension we are brought to the result that while the receiver is in charge of the mortgaged property and franchises, as the officer of the court, he is not open to attack by injunction, at the instance of the city, upon any of the grounds stated in the complaint.
The preliminary injunction must be dissolved, with $10 costs.

 See p. 19, ante.