PEOPLE ex rel. WOODHAVEN GASLIGHT CO. v. DEEHAN.

(Supreme Court, Appellate Division, Second Department. December 30, 1896.)

1. GAS COMPANIES—LAYING PIPES IN STREETS—EFFECT OF GRANT.

A grant by town authorities to a gas company of the right to lay pipes in the highways of the town creates a franchise, where the statute under which the gas company was organized (Laws 1848, c. 37) does not confer power of eminent domain on it; and therefore the change of municipal government from town to village authorities could not divest the company of its rights.

2. SAME—STREETS OPENED AFTER GRANT.

The grant of permission to a gas company to lay mains in the streets embraces only existing streets, and does not extend to streets opened after the franchise is acquired.

Appeal from special term, Queens county.

Petition by the Woodhaven Gaslight Company for a writ of peremptory mandamus to James F. Deehan, as street commissioner of the village of Richmond Hill, to command said commissioner to issue a permit to the petitioner to lay its pipes along Broadway street, of said village. From an order granting the writ as prayed, the street commissioner appeals. Reversed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Jesse Johnson, for appellant.
Paul E. De Fere, for respondent.

CULLEN, J. We agree with the counsel for the respondent that the consent of the municipal authorities of the town of Jamaica that the relator might lay its mains through the streets and highways of the town was more than a grant of a mere license or permit. By the act for the incorporation of gaslight companies (chapter 37, Laws 1848), corporations organized under it were given the right to manufacture and sell gas, and, with the consent of the municipal authorities, the power to lay their mains in public streets and highways. Such corporations were given no power of eminent domain,

and, as the only means of obtaining access to consumers was through the public highways, the franchise obtained by incorporation was practically a barren one, until the corporation obtained the consent of the local authorities for laying its mains. By such consent, the franchise became complete, and the corporation became vested, not only with the franchise to manufacture gas, but also a franchise to lay its mains for the purpose of delivering its product. City of Brooklyn v. Jourdan, 7 Abb. N. C. 25. The condition of such corporations is similar to that of street-railroad companies, which, by their incorporation, are vested with full corporate power to construct and operate street railroads, but cannot acquire a franchise of the street railroad itself unless by consent of the local authorities. If the necessary consents are obtained, then the franchise is complete, ard becomes property. People v. O'Brien, 111 N. Y. 41, 18 N. E. 692. Therefore the change of municipal government from town to village authorities could not divest the relator of its rights, which could only be forfeited for cause.

But the question remains as to the extent of the franchise acquired by the relator. Did it embrace every highway or street that might at any time thereafter be opened in the territory then under the control of the consenting municipal authorities, or was it confined to existing streets and highways? We think the latter is the true construction of the grant. It is to be premised that grants of the public are to be construed strictly against the grantee. Assuming that the local authorities might give a consent broad enough to include all highways that might be laid out in future, the natural reading of the consent actually given limits its application to existing highways. The local authorities are authorized to impose reasonable regulations as a condition of the consent. Subsequent change in density of population and the character of the locality, both as to business and as to improvements, and also the plan of the construction of any new highways, might render other regulations and conditions appropriate; and subsequent municipal governments should not be foreclosed from imposing such regulations, as conditions for a new consent. We think, therefore, there should be given to the consent the narrow construction.

The order appealed from should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.