(68 App. Div. 283.)

SEABOARD TELEGRAPH & TELEPHONE CO. v. KEARNY, Public Com'r.

(Supreme Court, Appellate Division, Second Department.   January 17, 1902.)

1. MUNICIPAL CORPORATIONS—REPAIR OF TELEPHONE AND TELEGRAPH LINES.
   That a system of telephone and telegraph lines and wires has been out of use for a short period, owing to financial difficulties of the company, and for a longer period afterwards, by reason of the city's refusal to authorize repairs, is no justification for the city's refusal to permit their lawful restoration.

2. SAME—FORFEITURE OF FRANCHISE.
   While a city may reasonably prescribe the time and method under which repairs on a system of telephone and telegraph lines shall be made, it cannot adjudge the franchise forfeited by nonuser, and absolutely deny the right to do so, and thus, in effect, condemn the company's property and confiscate its franchise.

3. SAME—MANDAMUS.
   A writ of mandamus to compel a city to issue a permit for the repair of telephone and telegraph lines need not recite the city's right to regulate and control the time and manner of doing the work.

4. SAME.
   The writ need not provide in any definite way for the protection of life and property during the progress of the work.

Appeal from special term, Queens county.

Application by the Seaboard Telegraph & Telephone Company for writ of mandamus against Henry S. Kearny, as commissioner of public buildings, lighting, and supplies of the city of New York. From a judgment granting a peremptory writ, requiring defendant to issue the relator a permit to repair, replace, and put in order its line of poles and wires, defendant appeals. Affirmed.

The following is the opinion of the court below (GARRETSON, J.):

There seem to be no valid reasons presented by the respondent why the writ asked for should not issue. The relator is the owner of the franchise for the construction and operation of the lines described in the papers. No forfeiture of its rights is shown. They have not been lost to it by abandonment, nor is the fact that the poles and wires are in disrepair, and have been so for a considerable period of time, a reason for denying the permit. On the contrary, these conditions call for the granting of it, that the liability of accident and injury to the public may be removed. Neither is it a relevant answer to the relator's application that there is another line of similar wires upon some of the same streets. These have been constructed since the lines of the relator were put there. Therefore rule 1 of the department, that "two lines of poles bearing conductors of a like class shall not be erected in any street or avenue," has not been violated by relator, and will not be by permitting it to repair, replace, and put in order its lines. The commissioner expressly admits that he has denied the permission asked for. While the court will not seek to control his discretion in this or a similar case it will enforce the relator's general rights, leaving it to the commissioner to prescribe the time, method, and conditions under which the work shall be

done. People v. Keating, 55 App. Div. 555, 67 N. Y. Supp. 413. The relator having the right thereto, the need therefor being absolute and essential to the exercise of the right (Greater New York Charter, § 584), I am of the opinion that the refusal to issue the permit is unreasonable. The circumstances do not justify the denial of the writ on the ground of laches. The relator made an effort to secure the permit within a comparatively short time after it acquired the franchise and property by purchase from the predecessor corporation. Motion granted, with $25 costs.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

William J. Carr (Louis H. Hahlo, on the brief), for appellant.
Henry A. Monfort, for respondent.

HIRSCHBERG, J. The matters in respect to which the appellant claims issues of fact were raised, requiring the issuance of an alternative instead of a peremptory writ, are either inconclusive on the question of the right to the relief, or involved conclusions by way of opinion rather than facts by way of defense. Conceding that the relator's system of lines and wires has been out of use for a short period, owing to the financial difficulties of the relator's predecessor in interest, and for a longer period since by reason of the appellant's refusal to authorize its repair, the fact affords no justification for the refusal to permit its lawful restoration. If in its present condition it is a menace to life or property, the necessity for its repair is imperative, and furnishes reason for granting, rather than refusing, the permit, as suggested by Mr. Justice Garretson in the opinion at special term, which will be found on page ——, 66 App. Div., page 15, 74 N. Y. Supp.

The parties have argued the appeal upon the assumption that the permit is required by section 584 of the Greater New York charter (chapter 378, Laws 1897). So far as applicable, that section reads as follows:

"It shall be unlawful, after the passage of this act, for any person or corporation to take up the pavement of any of the streets and parks of said city, or to excavate for the purpose of laying underground any electrical conductors, or to construct subways, unless permission in writing therefor shall have been first obtained from the said commissioner of public buildings, lighting and supplies, indorsed by the commissioner of highways. And except with a like permission therefor no electrical conductors, poles, wires or other electrical devices or fixtures shall be constructed, erected, strung, laid or maintained above or below the surface of any street, avenue, highway or other public place, in any part of said city."

It is not pretended but that the system in question was lawfully constructed and maintained before the creation of the present city, and it cannot be disputed that the law requires the person or corporation owning or operating it to keep it in repair. If a live wire were out of order, or a pole dangerously decayed, the duty to repair would at once exist, and it would be a narrow construction of the statute which would make the discharge of that duty dependent upon the procurement of a permit. The rules of the appellant's department require the removal of broken and dead wires, and wires, poles, and fixtures not actually in use, and as good reason exists why a permit should be required to enable those interested

to comply with these rules as in the case of the legal duty arising from injury in ordinary wear and use. In this case, however, it may be assumed that from lapse of time the repairs required have become so extensive as to require the replacing of a considerable part of the system, and that, in the view of both parties, the procurement of the permit is therefore an indispensable prerequisite.

That the relator is the lawful owner of the franchise under which the system has been constructed and heretofore maintained is undoubted. In People v. Deehan, 153 N. Y. 528, 47 N. E. 787, it was conceded that a franchise to a gas company to lay conductors in the streets and carry on business (page 532, 153 N. E., and page 788, 47 N. E.) "is property that cannot be destroyed or taken from it or rendered useless by the arbitrary act of the village authorities in refusing the permit to place the conductors under the streets. People v. O'Brien, 111 N. Y. 41, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684; City of Brooklyn v. Jourdan, 7 Abb. N. C. 25." The principle was enunciated that, while the authorities could enact reasonable regulations with respect to all interference with the streets, they could not lawfully refuse to permit the exercise of a right which had been expressly granted under the sanction of law. To the same effect were the decisions in People v. Keating, 55 App. Div. 555, 67 N. Y. Supp. 413, and Ghee v. Gas Co., 158 N. Y. 510, 53 N. E. 692. In the latter case the court said (page 524, 158 N. Y., and page 697, 53 N. E.):

"We have had no difficulty in reaching the conclusion that the consent that is necessary to confer a franchise upon a gaslighting corporation can be given only by the municipal assembly through appropriate ordinances, but that when the consent has been granted to a corporation duly created, by which a corporate franchise, which is property, has been acquired, the administrative officers must be applied to for a permit that will allow the corporation to exercise such rights in order that the public convenience may be subserved. The permission forms no part of the franchise, and is not essential to its existence, and, if refused, the granting of it may be compelled by mandamus, as, indeed, it has been in a number of cases; but the officers to whom application must be made may, within reasonable limits, fix the time when work on the streets may be begun, determine what portion of a street shall be first opened, how much of it may be left open at a time, the depth of the trench, and other details, the careful regulation of which is of first importance to a metropolitan city like New York."

The appellant's refusal to give a permit in this case is, in effect, a condemnation of the relator's property, and a confiscation of its franchise. It proceeds upon the theory that the corporate right to maintain the system and carry on the business has been forever lost by nonuser. The right so to adjudge is not vested in the appellant by the charter, and is not essential to the discharge of his lawful duties. It is true, as stated by the learned justice at special term, that he may reasonably and lawfully prescribe the time, method, and conditions under which the work of repair shall be done, although he may not deny absolutely the right to do it. It is unnecessary that this right of regulation and control by the appellant of the time, mode, and conditions of the work should be recited in the writ. It exists independently of the writ by statute and by virtue of the police powers of the municipality, and the writ must be deemed to be grant-

ed subject to it. Nor is it necessary that the writ should be modified so as to provide in any definite way for the protection of life and property during the progress of the work, in which regard the power of the municipal authorities is as ample as its exercise is imperative. The order should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.