Barrett, J.
An injunction pendente lite should only *388 be granted in a case like the present, where the plaintiff clearly shows that the official action complained of was illegal.
Great injury would here result to the defendant corporation from the granting of such an injunction, while no irreparable injury would result to the plaintiff, or the tax-payers generally, from its refusal. The injunction sought pendente lite is precisely the same as the injunction prayed for in the complaint. The plaintiff thus asks us on motion to give him the equivalent of final judgment upon a trial of the action. It is plain that if his charges of illegality are sustained upon the trial, the tax-payers will lose nothing by the.proposed sale. If, on the other hand, they are not sustained, the defendant corporation will lose all that it has thus far attained by the proceeding in question, and will be compelled to proceed de novo,
These considerations are conclusive against the present application. For it is entirely clear that such a case of illegal official action as would justify the sweeping injunction asked, has not been made out. It would not be just, however, to stop here. The merits were fully'argued and the parties are entitled to some expression of opinion with regard to the various objections made by the plaintiff to the procedure in question. These objections will therefore be briefly considered.
The consent of the Board of Aldermen was not, in my judgment, vitiated by the fact that a committee of the board, to whom the petition of the defendant corporation had been referred, was alone present at the time and place specified in the notice for the first consideration of the matter. There is nothing in the Railroad Act requiring the full board to sit for the purposes of a public hearing. It was usual and proper to depute the latter function to a committee, upon whose report the board could act advisedly. The consideration which the Act contemplates from the board was the consideration of a deliberative body, and its action was subject to the ordinary *389 veto power of the mayor with - respect to ordinances. The statutory -pre-requisites to the giving of such consent are, first, an application therefor in writing, and, second, before acting upon such application, the publications provided for in section 92 of the Railroad Law (Laws of 1890, c. 565). ■ The application in writing was here made and due public notice followed. Power to give the consent upon proper conditions, then became complete, and the board could thereafter exercise the power upon such consideration as it deemed suitable and sufficient.
There is less force in the objection that the resolution of the board should have been published pursuant' to section 80 of the Consolidation Act. That provision is inapplicable to the consent of the local authorities required by the constitution and the law. This consent is in no just or legal sense an alienation or appropriation of the property of the City, and the objection on that head proceeds upon a misconception of the precise nature of the board’s power and of its action - under the power. The section in question plainly refers to property owned by the City, and within its power of disposition. Here the city has the fee of the street, but such fee is in trust for street uses by the people of the State. The City cannot alien its title to the streets or dispose of its technical property therein. The franchise proceeds from the State, and the consent of the local authorities is simply to a form of street use.
The numerous objections made to the conditions imposed by the board are in the main answered by the proposition that the local authorities are not confined to the conditions required by the Railroad Act. These conditions must be imposed, but others may be added. The only limitation upon the power to affix further conditions is, that such conditions shall not contravene the statute nor relate to matters over which other bodies have complete control. This is another way of saying that the conditions must be reasonable and lawful. The *390 board had a right to give or to withhold its consent. It could lawfully say that it would give its consent to a road to be operated in a particular manner. That was not an attempt to exercise power as to the motor. It simply left the applicant to procure, as best it might, the means called for by the condition.
So as to the condition requiring the deposit of $1,000, ooo, subject to draft for the construction of the railroad. The court cannot condemn this condition as unreasonable. On the contrary, it seems to be a prudent requirement to insure the activity in the construction of the road and to prevent sham bids in the interest of those who may be inimical to the extension. The criticism upon the form of the resolution in this particular is somewhat superficial. The condition does not in reality require the completion of the road before the expiration of the statutory period of three years. It merely provides that if the road is not completed within two years, so much of the deposit as may then be unexpended shall be forfeited. That is but one way of requiring the expenditure of the entire deposit within the two years ; and as the extension will cost at least $2,000,000, it was not unreasonable in this manner to compel the expenditure of one-half of that sum within two-thirds of the statutory period. Such is the real meaning and effect of the condition and all that is contemplated.
The only condition which calís for further consideration is that with regard to the division of the single fare. No definite opinion need now be expressed on that head. The question was argued with great ability on both sides, and the conclusion I have arrived at is that the alleged illegality in that regard is by no means so clear as to justify the practical destruction, by a preliminary injunction, of the entire procedure looking to the sale of the franchise. I do not, however, mean to intimate an impression against this condition, but merely to say that, because of the ground I have had to go over, and the limited time afforded me for reflection, my mind is not sufficiently clear with *391 regard to it to assert its lawfulness as decidedly as I have with regard to the other conditions.
Motion for an injunction pending an action.
Action by Samuel Abraham, a property owner, against Theodore W. Myers, Comptroller of N. Y. City, the Mayor etc. of said city, and the Houston, West Street and Pavonia Ferry R. R. Co., to restrain the sale of a street railway franchise.
The facts are the same as in the previous action, except 'that this action is by an abutting owner instead of a taxpayer.
George Hoadly, William C. Trull, and Edward Lauterbach (Wm. H. Page, Jr., attorney), for plaintiff.
The plaintiff, as the owner of property abutting upon Lexington avenue, has the right to restrain in advance the performance of any act under authority of the illegal resolution referred to in the complaint, which act will result in damage or injury to his property, or expose the same to damage or injury (citing Davis v. Mayor, 1 Duer, 451 ; Negus v. City of Brooklyn, 10 Abb. N. C. 180 ; Wood v. City of Brooklyn, 14 Barb. 425 ; People ex rel. Negus v. Dwyer, 90 N. Y. 402).
Elihu Root, Jefferson Chandler and Francis Lynde Stetson (Bangs, Stetson, Tracy & MacVeagh), for defendants.
The property owner is premature in his complaint and action. He has no right except, in respect of some special injury. A sale, illegal and void, can cause no special injury to him, and he seeks to prevent the proposed sale only because of its alleged illegality.
Upon the merits, therefore, as well as upon the principle governing injunctions pendente lite, the motion should be denied, with costs.
Barrett, J.
For the reason given in the case of *392 Phillip Abraham against the same defendants, the motion 'for an injunction should be denied, with costs. This plaintiff has really no standing at the present time.
Forms under the railway act (l. 1890, c. 565, as amended by L. 1892, c. 676) for obtaining the consent of municipal AUTHORITIES TO THE BUILDING OF A STREET RAILWAY AND THE NOTICE OF THE SALE OF THE FRANCHISE.

Application to the Common Council for consent to build the street railway.

To the Honorable the Common Council of the City of New York:
Now at this day comes the Houston, West Street and Pavonia Ferry Railroad Company, which is and has been since the year 1874 a street surface railroad corporation, created and existing under and by virtue of the laws of the State of New York; said corporation states that it now owns and operates certain lines of street surface railroad in said city, among them a line on and over the surface of Lexington avenue in said city from Thirty-fifth street by single track to Thirty-sixth street, and from thence by double track to Forty-second street in said city, and along said Forty-second street, west to Grand Central Depot; that it also owns, anti is operating in connection therewith, a line on Thirty-fifth and Thirth-sixth streets in said city, extending from said Lexington avenue over said street to First avenue, and along said 'avenue to Thirty-fourth Street Ferry to the East river. Said corporation further says that it has filed in the office in which its certificate of incorporation is filed, a statement and certificate duly authenticated according to law by its board of directors, setting forth the fact that it is a corporation, and that it owns and is operating a system of street surface railway, of which the roads hereinabove memtioned are a part, and also a description of Lexington avenue in said city, and that it desires and proposes to extend a double track line of street surface railway over the Lexington avenue, the street, road and highway therein described, from the intersection of its present line on Lexington avenue with Forty-second street, upon and oyer said Lexington avenue to Ninety-eighth street, and when the avenue is further opened to the Harlem river; said corporation further says that it has procured the consent in writing, acknowledged as are deeds entitled' to be recorded, of the owners of one half in value of the property bordering on said Lexington avenue, situated between said Forty-second street and Ninety-eighth street, *393 that said corporation may construct, build, maintain and operate a line of street surface railroad upon the surface of said Lexington avenue, along and over the same from said Forty-second street as aforesaid, to Ninety-eighth street in said city, and that said corporation may operate said road, when built, by animal or horse power, or by cable, electricity, or any power other than locomotive steam power. Said .corporation further says that it now owns and is operating in the city of New York as a part of one system, 31.20 miles of railway ; that the extension to Ninety-eighth street herein described, if made, will be about 2.75 miles in length, and from Ninety-eighth street to Harlem river about 1.76 miles; that said extension will become and be a part of said system and connected therewith ; that the building of the same will greatly accommodate the public and promote the convenience thereof, and will give additional street surface railway facilities for travel along and over said street where said extension is sought to be made, and will enable applicant to transport persons from all points on its system over the extension, as a part of a continuous line, to their destination for one fare.
Wherefore, said corporation hereby applies to the local authorities of the city of New York for the consent thereof to build, extend maintain and operate a double track line of street surface railway in connection with its present system, upon, along and over' the surface of said Lexington avenue in said city, from Forty-second street to Ninety-eighth street, in said city, with the privilege to extend the same to the Harlem river in the future, when the streets of said city are prepared therefor, and when said corporation shall qualify itself so to do, between said Ninety-eighth street and said Harlem river.
Said corporation further says that^in making this application it will, if granted, keep and perform all of the conditions, requirements arid obligations required of it by law as conditions upon which said privilege may be granted, and that it will keep and observe in all respects the laws to which this application is subject, if granted :
Wherefore, it prays that this application be granted, and that it be allowed to construct, build, maintain, extend and operate its double line of railway from said Forty-second street, connecting there with its present line on and over said Lexington avenue to Ninety-eighth street in said city, and to continue the same under the conditions herein stated in the future to Harlem river'.
And said corporation hereby applies also, as a part of this petition for permission to build, lay down, establish and maintain a branch line of double track railroad, from a connection with its track when *394 laid down, on Lexington avenue, as hereinbefore proposed, at a junction of that avenue with One Hundred and Sixteenth street, on and over said One Hundred and Sixteenth street from said junction to Morningside Park and to the East river.
The Houston, West Street and Pavonia Ferry Railroad Company.
By John D. Crimmins,

President.

Notice by the Common Council when the applicalioti would be considered.

Public Notice. •
Office of the Clerk of the Common Council,
No. 8 City Hall,
New York, Sept. 8, 1892.
Pursuant to directions' given me in the following resolution, which was adopted by the Common Council, September 6,1892, and approved by the Mayor, Septembers, 1892, viz.:
Resolved.\ That Wednesday, the twenty-eighth day of September, 1892, at eleven o’clock A. M., and the Chamber of 'the Board of Aldermen, be and are hereby designated as the "time and place when and where the application of the Houston, West Street and Pavonia Ferry Railroad Company to the Common Council of the City of New York for its consent and permission that the petitioner may extend the existing railroad tracks of the said petitioner, and may build, construct, maintain and operate extensions or branches, of the said petitioner’s railroad in the city of New York as set forth in the petition of the said company for such consent, will be first considered,'and that public notice be given by the clerk of this board by publishing the samq: daily for fourteen days in two daily newspapers published in this city, to be designated by his Honor the Mayor, according to the provisions of section 92, as amended, of the Railroad Law, such advertising to be at the expense of the petitioner.
Public notice is hereby given that at the time and place named in the resolution the following application of the Houston, West Street and Pavonia Ferry Company, will be considered as required by the provisions of the Railroad Law. [Here followed a copy of the application.]
All persons interested in the foregoing application are hereby notified to be present at the time and place mentioned in the resolution.
Michael F. Blake, • Clerk of the Common Council.

*395
Notice of Sale, Street Railroad Franchise.

Notice is hereby given that the undersigned will sell at public auction on the 30th day of December. 1892, at 12 o’clock noon, at the office of the Comptroller, Room 15 Stewart Building, No. 280' Broadway, in the city of New York, the right, franchise and privilege of constructing, maintaining, using and operating a street surface railroad as a branch or extension of the Houston, West Street and Pavonia Ferry R. R. Co., upon the streets and avenues of the city of New York, as authorized in the resolution of the Common Council hereinafter contained, with all necessary switches, turnouts, turntables, power houses, stations, connections and stands for the proper and convenient working of the said railroad.
That the conditions upon which and not otherwise the consent of the Common Council of the City of New York has been given to the construction, maintenance, use and operation of a street railroad upon and through the said streets and avenues, are set forth in resolutions adopted by the Board of Aldermen of said city, September 29, 1892, and approved by the Mayor, October 8th, 1892, as follows:
Whereas, The Houston, West Street and Pavonia Ferry Railroad Company, a corporation duly incorporated and existing under and by virtue of the laws of this State, for the purpose of providing street railroad facilities for compensation in the city of New York, heretofore made application in writing to the Common Council of the City of New York, for consent to the construction, maintenance, use, operation and enjoyment of a street railroad upon and through the streets and avenues in said city, mentioned in said application, dated the 28th day of September, 1892, which application is in words and figures as follows, to wit: [Here followed a copy of the application,.]
And Whereas, The said Common Council caused public notice of such application and of the time and place when the same would be first considered, to be given by a notice thereof published daily for at least fourteen days in two daily newspapers of the City of New York, which has been done in the following papers, to wit: the “Sun" and “ News,” which papers were lawfully designated for that purpose by his Honor the Mayor of said city according to law ; and
Whereas, On the twenty-eighth day of September, 1892, at twelve o’clock noon, at the Chamber of the Board of Aldermen of said city, that being the time and place designated in said notice for a meeting of the Common Council of said city, said application was first considered, and all who desired to be heard at said time and *396 place were then and there heard by said Common Council; now, therefore, pursuant to law, it is
Resolved, That the consent of the Common Council of the City of New York be and is hereby given to the construction, use and operation of a street surface railroad upon and over the streets and avenues mentioned in said application, on the conditions hereinafter named, and as a branch or extension of the Houston, West Street and Pavonia Ferry Railroad Company ; that is to say, commencing with a connection with the tracks of said railroad company at Forty-second street, where the same are at present laid thereon, at a junction of said street with Lexington avenue; thence on and over said Lexington avenue, with double tracks to Ninety-eighth street, and thence on and over said Lexington avenue, after the same shall have been opened and prepared for further construction and extension of said double tracks on said avenue from said Ninety-eighth street to Harlem river, with further construction, extensions from the junction of One Hundred and Sixteenth street and Lexington avenue, through-One Hundred and Sixteenth street to Morningside Park and to the East river, as stated in its statement and certificate filed and made part hereof ; and be it further
Resolved, that the conditions upon which, and not otherwise,— the said consent is hereby given, shall be and are as follows, to wit:
Second.—That the right, privilege and franchises of using the said streets and avenues to construct, maintain, use and operate a street surface railroad upon the said streets as a branch or extension of the road of the applicant, shall be sold at public auction to the bidder, which shall be a duly incorporated railroad corporation of this State, organized to construct, maintain and operate a street railroad in the city of New York, for which consent may be given, and which will agree to give the largest percentage per annum of the gross receipts of such branch or extension as defined by section 93 of the General Railroad Law, with adequate security by a bond or undertaking in writing and under seal in such form and amount and with such conditions'and securities as shall be required and approved by the Comptroller of said city for the fulfillment of the said agreement and for the commencement and completion of such road according to the plan or plans and on the route fixed for its construction within the time designated and prescribed therefor by the laws now prevailing and applicable thereto.
Third.—That the bidder to which the aforesaid sale shall be made shall construct and put in operation a double track cable railroad upon said branch or extension, with all the necessary equipment and fixtures in the way of machinery, power and power *397 houses as shall be necessary for the operation of- a first-class cable road, the material and work to be of the best possible character, the plans of street construction, quality and pattern of materials therefor, number and location of sidings, connections with power houses and other railroad turnouts and turntables, to be subject to the approval of the Commissioner of Public Works of said city.
Fourth.—The cars shall be run upon such branch or extension as frequently as the convenience of the public may require. And if the right to construct or operate such branch or extension shall be purchased at said sale by the company applying for this consent, the same shall be operated as a part of a continuous line of the line of the applicant, so as to enable any passenger, by transfer tickets or otherwise, to obtain the benefit of a continuous ride for one fare to or from any point on said branch or extension and any point on the lines of railroads of the company applying for this consent, whether the same be owned or leased by sgid company. And if the right to construct said branch or extension shgll be purchased at said sale by any corporation other than the applicant for this consent, the said purchaser shall deliver and receive passengers at the point of junction at Forty-second street with the road of the applicant upon a division of earnings from such joint business, in the proportion that the length of the extension or branch so sold shall bear to the entire length of the road of the company applying for this consent whether owned or leased, together with the mileage of such branch or extension.
This consent is further conditioned that if the right to construct and operate said branch or extension shall be purchased by the company applying for this consent, the percentage to be paid upon gross receipts on behalf of said branch or extension shall be calculated on such portion of the gross receipts of the applicant as shall bear the same proportion to the whole amount thereof as the length of such extension or branch shall be to the entire length of its road, owned' or leased. This consent is further conditioned that no passenger shall be charged more than five cents for a continuous ride upon, from or to the above braneh or extensions undeqthe conditions as to connections herein in this section provided.
Fifth.—And this'consent is further conditioned that the successful bidder at said sale, to whom this consent for the construction and operation of said branch or extension shall be awarded, shall deposit, at the time of said sale, with the comptroller of said city, conducting the sale, to the order of the mayor; the sum of one million dollars, which shall be by the said mayor deposited in some *398 trust company or National Bank of the City of New York as a special deposit, subject to the conditions, as follows :
Said money to be held as security that the said railroad, to the construction of which consent is hereby given, shall be in good faith built and put in operation as contemplated by this consent, within the time or times fixed by law, and as expenditures upon said railroad for property, fixtures, machinery, street work, equipment and cable railroad appurtenances shall progress, said special deposit shall be subject to drafts of the corporation engaged in said work, upon certificate of the commissioner of public works that an amount equal to the amount drawn from time to time from said fund has been expended in good faith upon or for the purposes of said railroad, as herein in this section provided.
And if, at the expiration of two years from the time of said safe, said road shall not have been constructed and be in operation, the said fund then on deposit shall be forfeited to said city. And in case of failure on the part of any successful bidder at said sale to make such deposit at the time of such sale, a re-sale shall be immediately made upon the terms and conditions herein provided.
In accordance with the provisions of the aforesaid resolutions and in compliance with the requirements of the statute, I hereby give notice
A. That no bid will be received at said sale, except “ from a duly incorporated railroad corporation of this State, organized to construct, maintain and operate a street railroad in the city, for which such consent may be given.”
B. That no bid will be received from such corporation unless it shall have “ at least five days prior to the day fixed for such sale, or five days prior to the day to which such sale shall have been duly adjourned, filed with the comptroller of the city a bond in writing and under seal, with two sureties to be approved by such comptroller, conditipned that if such right, franchise and privilege shall be sold to such corporation, to pay to the City of New York, the sum of fifty thousand dollars as liquidated damages and not by way of penalty in the event of the failure of such bidder to fulfill the terms of sale, comply with the provisions of the law pertinent thereto, and construct, complete and operate its railroad according to the plan or plans and upon the route and routes fixed for its construction within the time designated by law for the construction and completion of its railroad, and also conditioned to pay to the Houston West Street and Pavonia Ferry Railroad Co., if it shall not be the successful bidder, the necessary expenses incurred by such corporation prior to the sale, pursuant to the requirement and direction of *399 the local authorities, within twenty days after such sale and upon the certificate of the comptroller or other officer conducting the same as to the sum or amount to be paid.”
C. One of the conditions of said sale, as fixed by said resolutions, requires that the successful bidder at said sale shall deposit with me at the time of said sale the'sum of one million dollars to the order of the Mayor of the city, and if said deposit is not made by the successful bidder at the time of said sale, I give notice that I shall thereupon cancel the said bid for failure to comply with the terms and conditions of sale, and shall forthwith re-sell the aforesaid consent and license, and shall declare forfeited the aforesaid bond of fifty thousand dollars for failure to fulfill the terms of sale.
D. In view of the failure of the city heretofore in many cases to secure the benefits expected from the sales of street railroad franchises, by reason of purchasers at said sales failing to construct and operate the roads upon various pretexts, I call attention to the fact that the Common Council of the city has required as a condition of its consent in this case, that the purchaser at said sale shall, s.o far as said deposit of one million dollars is concerned, assume all responsibility of obtaining consents of property owners, and constructing and putting in operation the said railroad within two years from the date of sale', and has specifically provided that “ if at the expiration of two years from the time of said sale said road shall not have been constructed and be in operation, the said fund then on deposit shall be forfeited to said cityand on the part of the city notice is hereby given that no excuse for failure to construct and put the said road in operation within two years will be accepted or be available.
E. In addition to the percentage bid by it on the sale, the purchaser will be liable to pay annually into the City Treasury for the first five years three per cent., thereafter five per cent., of its gross receipts, as required by section 95 of the General Railroad Law, calculated upon the basis provided for extensions in said law; and no bid will be accepted unless it be of a percentage additional to the said percentage provided for by said law. And said sale is upon the further condition that all provisions of law applicable to said railroad shall be by the purchaser, at said sale, duly complied with.
Dated New York, Dec. 6, 1892.
•Theo. W. Myers,

Comptroller.

Finance Department, Comptroller's Office.