(34 App. Div. 551.)

GHEE v. NORTHERN UNION GAS CO.

(Supreme Court, Appellate Division, First Department. November 25, 1898.)

MUNICIPAL CORPORATIONS—GREATER NEW YORK CHARTER—CONSTRUCTION—
  GAS COMPANIES—STREETS—RIGHT TO USE—PERMIT.
    Greater New York Charter (Laws 1897, c. 378) § 49, subd. 4, empowers the municipal assembly to regulate by ordinance the opening of streets for purposes authorized by law. Section 416 requires the board of public improvements to recommend all ordinances regulating the laying of gas pipes and opening of streets for such purpose. Section 573 gives the commissioner of the department of public buildings, lighting, and supplies control of the making and execution of contracts for furnishing the city with gas, and the granting of permission to open streets, when approved by the department of highways. Section 525 provides that no disturbance of a street for laying gas pipes shall be made until a permit is had from the department of highways. Transportation Corporations Act (Laws 1890, c. 566, § 61) empowers gas companies to lay mains through city streets with consent of the "municipal authorities," who are empowered to exempt such companies from taxation for a limited term. *Held*, that the departments of public buildings, lighting, and supplies and of highways constituted "the municipal authorities" mentioned in the latter act, though the municipal assembly alone could exempt such companies from taxation, and that the permits of such departments were sufficient to authorize a gas company to open streets to lay its mains.

Appeal from special term.

Action by John F. Ghee against the Northern Union Gas Company to restrain the laying of gas mains in certain streets in the city of New York. From an order denying plaintiff's petition to continue a preliminary injunction and vacating it, plaintiff appeals. Affirmed.

Argued before BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Henry G. Atwater, for appellant.
Thomas Allison, for appellee.

O'BRIEN, J. This is a taxpayer's action, brought under Laws 1881, c. 531, as amended by Laws 1892, c. 301, and the object of it is to restrain the laying of gas mains in certain streets in New York City upon the grounds that the defendant, the Northern Union Gas Company, which is laying the mains, has no franchise or right to do so, and that certain officials of the city—the commissioner of high-

ways and the deputy commissioner of highways of the borough of the Bronx—have illegally granted the permit for the laying of said mains, and are aiding and assisting the gas company in laying them, without authority of law. The theory upon which the complaint is drawn is that the gas company has not, and never had, power to carry on its business outside of the limits of the village of Williamsbridge; but it appeared upon the motion for the injunction by the opposing affidavits that the defendant, the Northern Union Gas Company, was organized in September, 1897, for the purpose of manufacturing and supplying gas and electricity for public and private buildings in the city of New York, and that it purchased from the Northern Union Gaslight Company, a distinct and separate corporation, organized before the year 1895, gas mains, supply pipes, and the privilege of supplying gas in the Twenty-Fourth ward of the city of New York. This necessitated a shifting on the part of the plaintiff to the position that the new company, though incorporated with the right to lay gas mains anywhere within the city, "with the consent of the municipal authorities," had never obtained such consent. There are thus presented upon this appeal, as there was in the court below, two questions for determination,—the first, whether the plaintiff could maintain a taxpayer's action to obtain the relief sought, and, in that connection, whether the complaint was sufficient, and the second, whether the permits granted by the department of public buildings, lighting, and supplies and by the department of highways was the consent of the municipal authorities, or whether the consent of the municipal assembly, as the successor of the old board of aldermen, was required.

The first question—that of the right of a taxpayer to bring such action, and what the complaint should allege—has been lately determined by this court in the case of Sheehy v. McMillan, 26 App. Div. 140, 49 N. Y. Supp. 1088, which decision renders further discussion unnecessary, it being sufficient to say that, if the facts had been made to appear as alleged in the complaint, there might be a good foundation for the action. Upon the motion below, however, it was made to appear that the plaintiff had not proved such facts so far as the defendant, the Northern Union Gas Company, is concerned, and, as a result, he was compelled to change the theory upon which the complaint was framed, namely, that such company, by its articles of incorporation, was confined in its business operations within the limits of the village of Williamsbridge. In Sheehy v. McMillan, supra, it was held that:

"If the complaint does not state a cause of action, then it necessarily follows that the plaintiff was not entitled to the order appealed from. Before he could obtain an order of this character, he was required to show by his complaint that he had a good cause of action, and was entitled to a judgment against the defendants. Code Civ. Proc. § 603. The cause of action attempted to be alleged in the complaint cannot be perfected, for the purpose of sustaining the order by the aid of the other papers used on the motion."

Though we were agreed in the abstract that a good cause of action was pleaded, it now appears that the theory upon which the complaint was drawn must be abandoned. We will pass, however,

without deciding, the question as to the right of the plaintiff to maintain this action as a taxpayer, and the sufficiency of the complaint, and turn our attention to the other question, the determination of which we regard fatal to the plaintiff's right to an injunction. It was not disputed that the Northern Union Gas Company is the successor of the Northern Gaslight Company, and, in addition to its own corporate powers, possesses, as a successor in interest of the Northern Gaslight Company, such powers as that company had. The Northern Union Gas Company was incorporated in 1897, under the transportation corporations act, for the purpose of engaging in the gas business anywhere within the city of New York. It subsequently made a contract with the department of public buildings, lighting, and supplies of the city to light certain streets in the Twenty-Fourth ward, where the streets in question are situated; and one of the provisions of the contract stated that the gas company should have the right to lay pipes, between certain dates, in any of the streets in that ward, upon applying to the commissioner of highways for a permit to open the streets. Upon application made, this permit was duly issued, authorizing the gas company to remove the pavements and the surface of the streets for the purpose of laying down mains. The plaintiff, though not disputing these facts, contends that such permits do not constitute the consent of the municipal authorities, as required by the transportation corporations act; in other words, the plaintiff's contention is that "the consent of the municipal authorities," as required by the act, referred to the municipal assembly, and not to the heads of the departments named. In support of this contention, that without the special permission of the local legislative board the disturbance of the surface of the streets for the purpose of laying gas mains was illegal and unauthorized, we are referred to many authorities which have construed the term "municipal authorities" to be synonymous with, and to mean, the body having the right to legislate locally on the subject, such as boards of supervisors and boards of aldermen, as constituted in cities and counties throughout the state, and the board of aldermen as it was constituted in the old city of New York prior to the consolidation of the different communities into the greater city. Although the cases referred to are undoubted authorities for the proposition contended for, they do not particularly aid us in the disposition of the question presented for our consideration, for it must be remembered that the legislature, having control over the streets, could provide what body or department should be vested with the authority to regulate their use, and could designate who should constitute the local authority whose consent must be first obtained.

As we are dealing here with the wording and construction of statutes, we are compelled, even at the risk of unduly extending this opinion, in view of the novelty and importance of the questions presented, to set forth some of them at length. The Transportation Corporations Act (Laws 1890, c. 566, § 61) provides as follows:

"Every such corporation shall have the following additional powers: (1) If incorporated for the purpose of supplying gas for light, to manufacture, sell and furnish such quantities of gas as may be required in the city, town

or village where the same shall be located, * * * for lighting the streets and public or private buildings or for other purposes; and to lay conductors for conducting gas through the streets, lanes, alleys, squares and highways, in such city, villages or towns, with the consent of the municipal authorities thereof, and under such reasonable regulations as they may prescribe; and such municipal authorities shall have power to exempt any such corporation from taxation on their personal property for a period not exceeding three years from the organization of the corporation."

The position of the gas company is that, having been incorporated under the law, it is authorized to lay gas mains in the city of New York, "with the consent of the municipal authorities thereof," and that it has obtained that consent by procuring a contract with the department of buildings, lighting, and supplies, and a permit from the commissioner of highways. The plaintiff, on the other hand, contends that the municipal authorities referred to in the act are the legislative body of the city, town, or village in which the gas mains are to be laid, and that in the city of New York the municipal authorities, since the new charter (Laws 1897, c. 378), are the municipal assembly, and prior thereto were the common council. That the last proposition is true, namely, that prior to the charter the common council constituted the municipal authorities, has been decided too frequently to be questioned. But under the new charter an entirely new question is presented, which is whether the municipal authorities referred to in the transportation corporations act are the commissioner of highways alone, or such commissioner in connection with the commissioners of building, lighting, and supplies, or the municipal assembly. That a radical change has been effected by the new charter in the distribution of the powers and functions of the corporation of the city is self-evident, and it goes without argument that the legislature of the state, in the exercise of its sovereign power, could change existing laws, and substitute entirely new provisions affecting the rights, powers, and duties of the municipality. Thus, it could take away from the common council or municipal assembly all power over the streets, and confer that power upon some other local body or officer. The question remains whether it has done so.

We are now brought to a consideration of the various provisions of the charter relating to the subject of streets, and the division of the powers to be exercised by the different bodies or departments in reference thereto. In that connection we should remember the principle referred to in the introduction to the charter by the commissioners, who drafted it, namely, "the established rule of law which prescribes that a charter granted to a municipal corporation must be construed so strictly that nothing may pass by bare inference, but every substantial power must be found in the express terms of the grant." Coming, then, to the power conferred on the municipal assembly over streets in general, and more particularly in reference to their use in the laying of gas mains, we find by section 46 that, "Except as otherwise provided in this act, all the powers and duties conferred or charged upon the common council or the mayor, aldermen and commonalty of the city of New York, or the board of aldermen thereof, * * * shall be exercised and performed by the mu-

nicipal assembly." By section 45, "The municipal assembly is authorized to grant * * * the franchise or right to construct and operate railways * * * and to maintain and regulate ferries." But we fail to find the power conferred to grant any franchise to a gas company, or to consent to the use of the streets thereof, expressly conferred upon the municipal assembly. Indeed, neither the city nor any of its officers has the power to grant a franchise to carry on the business of supplying gas by means of pipes in the streets; that power not having been conferred, but being still vested in the legislature. The distinction between a grant of a franchise and the consent of a municipal authority must not be confused, although much of the argument of the plaintiff fails to note such distinction. As well expressed by Mr. Justice Barret in Abraham v. Meyers, 29 Abb. N. C. 384, 23 N. Y. Supp. 225, 228: "The franchise proceeds from the state, and the consent of the local authorities is simply to a form of street use." City of Brooklyn v. Jourdan, 7 Abb. N. C. 23. The legislature can, of course, confer the right upon a municipal corporation, not alone to give a consent, but also to grant a franchise, as is well exemplified by section 45 of the charter, to which we have referred, where such power is conferred upon the municipal assembly with respect to railways and ferries. No such power is anywhere given in the charter to the municipal assembly to grant franchises to gas companies. In addition to the special authority given for certain specified purposes, none which relate to gas companies, we find by subdivision 4 of section 49 of the charter the power conferred upon the municipal assembly "to regulate by general ordinance the opening of street surfaces for purposes authorized by law." We must look further, therefore, and see if the charter specially confers on any local authority jurisdiction over the subject of gas companies. The charter further enacts, by section 416:

"It shall be the duty of the board of public improvements to prepare and to recommend to the municipal assembly all ordinances and resolutions regulating the following matters: * * * (2) The regulating * * * of streets, * * * and the making of all excavations therein for public purposes. * * * (10) The laying of gas pipes and electric wires underground, * * * and the lighting of all public thoroughfares, * * * and the opening of street surfaces for the business of manufacturing, using and selling electricity, gas, steam."

It will thus be seen that the board of public improvements is charged with the duty of recommending to the municipal assembly ordinances and resolutions regulating, among other things, the laying of gas pipes and electric wires under ground; and the latter body is empowered to regulate by general ordinance the opening of street surfaces for purposes authorized by law. Such general powers, thus conferred, are in no way inconsistent with, but are to be exercised in connection with, the powers and duties conferred on the separate departments by the charter. And in reference to the department having the right to grant permits to use the streets for gas purposes, we find by section 573 that it was enacted:·

"The commissioner of the department of public buildings, lighting and supplies shall have cognizance and control of: * * * (2) The making and performance of contracts when duly authorized in accord with the provisions

of this act, and for the execution of the same in the matter of furnishing the city, or any part thereof, with gas, * * * and of the use and transmission of gas * * * for all purposes in, upon, across, over and under all streets. roads, avenues, parks, public places and public buildings; * * * and the granting of the permission to open streets, when approved by the department of highways."

By said charter (section 525) it is enacted as follows:

"No removal of the pavement or disturbance of the surface of any street for the purpose of * * * laying down gas and water pipes, * * * or introducing the same into buildings. or for any purpose whatever, shall be made until a permit is first had from the department of highways."

Reading these provisions together, it is difficult to avoid the conclusion that the "municipal authorities" whose consent is necessary for the laying of gas mains in the streets are the department of public buildings, lighting, and supplies and the department of highways. This is an undoubted departure from the plan or scheme under which the old government of the city was conducted, for therein the local authorities to which reference is made in nearly all prior legislative acts were the municipal council or board of aldermen. By the charter scheme, the new legislative body has special powers and duties conferred upon it, and the right is given to enact general ordinances affecting subjects which are specially confided to distinct and separate departments of the city government. The purpose thus evidenced is, clearly, to separate the legislative from the executive department, and to confer upon the latter the power necessary to execute the work devolving upon each department, subject only to the right of the legislating body to enact general ordinances as to the mode of exercising such power.

In reaching the conclusion that the consent of the commissioners referred to is the consent of the proper municipal authorities required by the transportation corporations law, we have not overlooked the provision in that act which gives the power to the local authorities to exempt the gas company from taxation for a limited time, nor the force of the argument based thereon that, as the municipal assembly could alone exempt gas companies from taxation, therefore that body constituted the municipal authorities whose consent is required. When the transportation corporations law became a law, the municipal authorities therein referred to were undoubtedly the local legislative body in any city, town, or village, and, in addition to granting a consent, had the right to exempt such companies from taxation. Now, however, by the charter, as stated, a radical departure has been made in the distribution of the powers and functions of government, and we are not to be controlled in our construction of the new charter solely by an argument based upon the fact that formerly the same body was vested with the double right of granting consent and of exempting from taxation. Such an argument assumes that the existence of the language of the transportation corporations law renders it impossible for the legislature to enact that the one power may not be exercised by one municipal authority and the other power by another municipal authority.

We deem it unnecessary to discuss the other questions presented, as to what rights, if any, the respondent company acquired as the

successor of the former company and by virtue of the consent and permit which it had in the Twenty-Fourth ward, thinking, as we do, for the reasons already given, that the respondent company has by the contract made with the department of public buildings, lighting, and supplies, which carried with it the permit to use the street for laying gas mains, coupled with the consent of the commissioners of highways, conformed to the provisions of the law entitling them to proceed with the work of laying mains in the street in question. The learned judge below was, therefore, right in refusing to enjoin the projected work, and the order appealed from should be affirmed, with costs.

Order affirmed, with $10 costs and disbursements. All concurred; IN-GRAHAM, J., in result, on the ground that the plaintiff cannot maintain this action as a taxpayer upon the facts as they appear.