(110 App. Div. 171)

### WEST SIDE ELECTRIC CO. v. CONSOLIDATED TELEGRAPH & ELECTRICAL SUBWAY CO.

### PEOPLE ex rel. WEST SIDE ELECTRIC CO. v. SAME.

(Supreme Court, Appellate Division, First Department.   December 22, 1905.)

ELECTRICITY—MUNICIPAL CORPORATIONS — GRANT OF FRANCHISE — USE OF STREETS.

Laws 1879, p. 562, c. 512, subsequently amended by Laws 1882, p. 70, c. 73, authorized the formation of corporations to carry on the business of lighting by electricity.   Section 2 of the act empowered such corporations to construct suitable wires with the consent of the municipal authorities.   Laws 1887, c. 716, p. 929 constituted a board of electrical control for the city of New York, and transferred to it all powers previously conferred on the commissioners of electrical subways by Laws 1885, p. 852, c. 499, in·relation to placing and maintaining electrical conductors in said city.   Transportation Corporations Law, Laws 1890, p. 1146, c. 566, art. 6, § 61, subd. 2, authorized a company incorporated for the purpose of using electricity to erect suitable wires or other conductors over or under streets of any city, with the consent of the municipal authorities thereof.   *Held*, that the board of aldermen of the city of New York (prior to the adoption of the charter of 1897), and not the board of electrical control, was the body competent to grant the consent of the city to the laying of electric wires in a subway by a corporation organized under the transportation corporations law.

Ingraham, J., dissenting.

Appeal from Special Term, New York County.

Action by West Side Electric Company against the Consolidated Telegraph & Electrical Subway Company, and mandamus proceedings by the people on the relation of the West Side Electric Company against the same defendant.   From a judgment entered on dismissal of the complaint in the action, and from a final order dismissing the alternative writ in the mandamus proceedings, plaintiff and relator appeals.   Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON,. INGRAHAM, and LAUGHLIN, JJ.

W. D. Guthrie, for appellant.

Elihu Root, for respondent.

PATTERSON, J.   The matter in contest between the parties to this record is brought before the court by two appeals—one from a judgment in an action in which the relief was sought of a perpetual injunction against the defendant to restrain it from interfering with or obstructing the plaintiff in the maintenance of certain cables and electrical conductors, located in subways or ducts in the city of New York, and the other from a final order dismissing and quashing an alternative writ of mandamus, which had been directed to the defendant, to enforce a right claimed by the appellant to lay or place other cables for electric lighting purposes in subways in the city of New York.

The single question involved in both the action and the special proceeding relates to the existence of a right on the part of the appellant to use the subways, as claimed by it.   It is conceded that it has what may be called an apparent authority to use those subways; that is to say, it has received the consent and authority of the board of electrical

control of the city of New York, and it insists that under the law, that consent and authority is all that is required to enable it lawfully to lay, construct wires, and maintain other appropriate appliances for conducting and distributing electricity in subways under the streets, avenues, and public places in the city of New York. The defendant and respondent insists that the apparent consent and authority referred to is inadequate and insufficient to confer upon the appellant the right it asserts; but on the contrary that the power to grant the necessary consent and authority resided only in the board of aldermen of the city of New York. The situation, so far as the appellant is concerned, may be stated in a few words: It is an electrical company organized in October, 1896, under the transportation corporations law, which became operative on May, 1891. Its corporate purposes are to manufacture and use electricity for lighting, heating, or furnishing power, in lighting streets, avenues, public parks, and places, and public and private buildings in the city and county of New York. By subdivision 2 of section 61 c article 6 of the transportation corporations law (chapter 566, p. 1146, of the Laws of 1890), it is provided that if a company is incorporated "for the purpose of using electricity for light, heat, or power" it shall have power—

"To carry on the business of lighting by electricity or using it for heat or power in cities, towns and villages within this state, and in the streets, avenues, public parks and places thereof, and public and private buildings therein; and for the purposes of such business to generate and supply electricity; and to make, sell or lease all machines, instruments, apparatus and other equipments therefor, and to lay, erect and construct suitable wires or other conductors, with the necessary poles, pipes or other fixtures in, on, over or under the streets, avenues, public parks and places of such cities, towns or villages, for conducting and distributing electricity, with the consent of the municipal authorities thereof, and in such manner and under such reasonable regulations, as they may prescribe."

The appellant, on October 30, 1896, procured from the board of electrical control of the city of New York, an authority, permit, or certificate, which recited that the appellant had petitioned the board of electrical control for a franchise to do business in the city of New York, and had filed a certificate of its incorporation with that board and it was therefore resolved—

"That the West Side Electrical Company having filed the necessary certificate with the secretary of the state of New York and the clerk of the city and county of New York permitting it to do business, be, and it hereby is, authorized and empowered to lay and construct suitable wires or other conductors in subways under streets, avenues, public parks, and places in the city of New York for conducting and distributing electricity under the direction of the board of electrical control, subject to all existing rules applicable thereto, and to all regulations which the board may hereafter impose by resolution or otherwise, provided always, and this consent is given on that express condition, and not otherwise, that until the further order and resolution of this board, the electrical conductors of said company shall be laid or constructed by the Consolidated Telegraph & Electrical Subway Company, under and in pursuance of the statutes of the city of New York, and under the ordinance of this board."

Acting under the authority thus conferred, or sought to be conferred, the appellant procured permits to open the streets and to introduce its wires or cables in subway ducts.

The respondent, the Consolidated Telegraph & Electrical Subway Company, was incorporated in December, 1885, under the telegraph act, but such powers as it possesses as a subway company are derived from two agreements—one of July, 1886, and the other of April, 1887, confirmed by section 6, c. 716, p. 929, of the subway act of 1887. As is well stated by counsel for the appellant:

"The general nature of the obligation of the subway company under said contracts and statute, is to supply ducts to all corporations duly authorized to install and operate electrical conductors in the streets of the city, giving equal facilities to all, and receiving equal rentals from all."

After the appellant received the permit or certificate from the board of electrical control, the respondent permitted it to open the streets and lay cables in the ducts, and for some time the appellant used those cables and ducts and paid rent therefor, and the right of the appellant seems to have passed without challenge until June 15, 1903, when it was notified by the respondent, through its secretary, and general superintendent, that it had been advised that the appellant was a company not having lawful power to operate electrical conductors in any street of the city of New York, and that the respondent was not therefore authorized to lease its subways and ducts to or permit the use by the appellant. Reasons in the nature of excuses for the respondent delaying action in the premises are then set forth in the notice (which reasons it is not now necessary to consider); but the distinct requirement was made that the appellant forthwith remove and withdraw all its cables from the subways and ducts of the company "on the ground that you are not a company having lawful power to operate electrical conductors in the city of New York, or any part thereof." Counsel for the appellant calls attention to the history of the legislation respecting electric lighting in the state of New York, and points out that the first statute concerning that subject was chapter 512, p. 562, of the Laws of 1879, subsequently amended by chapter 73, p. 70, of the Laws of 1882, whereby the formation of corporations was authorized to carry on the business of lighting by electricity; and section 2 of the act provided that such a corporation shall have power to lay, erect, and construct suitable wires in cities, towns or villages—

"With the consent of the municipal authorities thereof, under such reasonable regulations as they may prescribe."

It is conceded that at the time of the passage of the act of 1879, the common council of the city of New York was the municipal authority vested with the power to grant consents on behalf of the city, and it is also admitted that that power remained in the common council until the year 1887. In 1884 and 1885, a new body to be known as the board of commissioners of electrical subways in the city of New York, was created by the Legislature, and to that new board was confided the duty of regulating and controlling the use of the streets of the city of New York for electrical wires or conductors. In 1887, the Legislature passed an act (chapter 716, p. 928) relating to electrical conductors in the city of New York, and by that act was constituted the board of electrical control in and for the city of New York. By section 1 of that act, it is provided that:

"All the powers and duties conferred or imposed by the said act (chapter 499 of the Laws of 1885) upon the commissioners appointed thereunder in and for the city of New York, and all the powers and duties heretofore by any law conferred or imposed upon the local authorities of said city, or any of them, in respect to or affecting the placing, erecting, construction, suspension, maintenance, use, regulation or control of electrical conductors or conduits or subways for electrical conductors in said city are hereby transferred to and conferred and imposed upon, and shall hereafter be exclusively exercised and performed by the said board of electrical control, constituted as provided in this act, and its successors as hereinafter provided."

That is the board from which the appellant received the consent upon which it relies.

What has been heretofore stated is sufficient to indicate the general aspect in which the controversy now comes before us, and it will be seen that the real issue is whether the appellant acquired a franchise to do business in the city of New York under the provisions of the transportation corporations law. The court below determined that it had not, and we are compelled by authority to acquiesce in that determination. It is evident that the appellant and the respondent and the board of eletrical control were all of opinion that the municipal authority referred to in subdivision 2 of section 61 of the transportation corporations law was the last-mentioned board—a view which would be now adopted by us were it not for a contrary expression of opinion by the Court of Appeals, which we deem to be controlling. Subdivision 1 of section 61 of the transportation corporations law relates to gas companies. Among the powers conferred are:

"To furnish such quantities of gas as may be required in the city, town or village where the same shall be located, or said two or more villages or towns, not over five miles distant from each other  *  *  *  and to lay conductors for conducting gas through the streets, lanes, alleys, squares and highways, in such city, villages or towns, with the consent of the municipal authorities thereof, and under such reasonable regulations as they may prescribe," etc.

In Ghee v. Northern Union Gas Co., 34 App. Div. 551, 56 N. Y. Supp. 450, a taxpayer brought an action under the Laws of 1881, to restrain the laying of gas mains in certain streets of the city of New York, upon the ground that that company had no franchise or right to do so, and that certain officials of the city, the commissioner of highways and the deputy commissioner of highways of the borough of the Bronx had illegally granted a permit for the laying of such mains. The Northern Union Gas Company was organized in 1897, under the transportation corporations act for the purpose of manufacturing and supplying gas and electricity to public and private buildings in the city of New York. The question arose in the case as to the power of the commissioners to issue the permit or grant the authority which was given to the gas company. Upon a consideration of the whole subject, it was determined by this court that the proper municipal authority under the provisions of the Greater New York Charter of 1897, to grant the consent was in the commissioner of highways and not the common council of the city of New York, and we remarked in that case that:

"It is difficult to avoid the conclusion that the municipal authorities whose consent is necessary for the laying of gas mains in the streets are the department of public buildings, lighting and supplies, and the department of highways. This is an undoubted departure from the plan or scheme under which

the old government of the city was conducted, for therein the local authori-
ties to which reference is made in nearly all prior legislative acts were the
municipal council or board of aldermen."

On appeal to the Court of Appeals our decision was reversed (158 N.
Y. 511, 53 N. E. 692), and it was held that in the city of New York the
municipal authority," within the meaning of that term as used in section
61 of the transportation corporations law, whose consent is required to
lay conductors for conducting gas through the streets of the city, is the
municipal assembly. That determination of the Court of Appeals is an-
nounced as a general proposition, not confined to a case arising under
the provisions of the Greater New York Charter, and the reasoning of
the opinion is, in our judgment, decisive of the present case.    Were it
not for that, it might well be claimed that a franchise to carry on the
business of generating and supplying electricity, or of making, selling,
or leasing apparatus or other equipment, is granted directly from the
state without any consent of the municipal authorities required by the
statute, and that such consent, if so required, relates to the exercise ad-
ministratively of a granted franchise to lay, erect, and construct suit-
able wires or other conductors in, over, or under the avenues, streets,
public parks, and places of said cities; or, in other words, that the
authority was only that of an administrative authority as to the methods
and manner in which particular things pertaining to the exercise of the
franchise once granted, should be done.    But in the Ghee Case, the
Court of Appeals has gone much farther, and has declared that a part
of the franchise is the distinct specific right which the appellant claims
as against the respondent and that that right was not complete, and a
franchise was not duly conferred, until the municipality gave a sup-
plementary consent to the general power which the appellant sought
to acquire under its certificate of incorporation.    If it be true that
the right to the use of the streets is a part of the franchise of the ap-
pellant, then it results from the Ghee Case that the board of alder-
men was the legislative body, having the power to grant a franchise to
use the streets.    In the case cited, it was held in effect, that previous
to 1897, the board of aldermen of the city of New York, the legisla-
tive branch of the city government, was the body which had the pow-
er to confer franchises to use the streets.    Therein it is said that:

"The accumulation under ground, during the past few years of sewers,
electrical subways, cable and electrical railway conduits, pneumatic tubes,
steam-heating, water and gas pipes, seems to indicate that the day may come
when there will be no more unoccupied space beneath the surface of the
streets, and of this situation the Legislature and the learned commissioners
who drafted the charter undoubtedly had full knowledge. It is difficult to
believe that, with such knowledge, they would attempt to take away from
general and responsible representatives of the people, the power to grant such
important and valuable rights and vest them in subordinate administrative
officers," etc.

Those words are significant with respect to the intent of the Legis-
lature in passing the act of 1887, conferring powers on the board of
electrical control, and although nothing is definitely decided on that
subject, the question is left fairly open for consideration when it is
presented in a proper case.

We are unable to see that the language of the act of 1887, confers

upon the board of electrical control any different power than was conferred upon the department of buildings, lighting, and supplies, by the charter of 1897. The points decided in the Ghee Case, in a few words are these: That the right and power to use the streets under the provisions of the transportation corporations law is part of a franchise; the consent of the municipal authorities is necessary to the full acquisition of that franchise; it can be given only by municipal authority, and that municipal authority is the body legislating for the city. There are some inaccuracies in the opinion of the Court of Appeals in the Ghee Case concerning the history of the granting of consents to gas companies to lay gas pipes and mains in the city of New York. The power to grant consents was not always exercised by the common council of the city of New York, but express legislative authority was at one time given to a board to grant such consents. In 1886 (section 15, c. 321, p. 515, Laws 1886) an act was passed to authorize the formation of gas companies in the city of New York, and to regulate the powers and duties of the same. By section 15, it is provided that:

: "Any company subject to this act may lay its mains or pipes, and supply its gas through the same, without any further proceedings, conditions, or authority, than those herein contained, save the consent thereto of the mayor, comptroller and president of the department of taxes and assessments of the city of New York."

. The reference to this subject made in the opinion of the Court of Appeals proceeds upon a concession which was seemingly made by all the parties to that case. The inaccuracy is not material, if we correctly apprehend the full force and effect of the opinion. In the light of that decision, the provisions of the act of 1887, relating to the board of electrical control, and the powers and duties conferred upon local authorities in respect to or affecting the "placing, erecting, construction, suspension, maintenance, use, regulation or control of electrical conductors in said city are hereby transferred to and conferred and imposed upon, and shall hereafter be exclusively exercised and performed by the board of electrical control," do not relate to granting a consent which in and of itself would operate as a completion of a franchise.

Notwithstanding the very elaborate and learned argument of the counsel for the appellant, we feel constrained by the authority of the Ghee Case to affirm the judgment and order appealed from.

The judgment and order should be affirmed, with costs.

O'BRIEN, P. J., and McLAUGHLIN, J., concur. LAUGHLIN, J., concurs in result.

INGRAHAM, J. (dissenting). The relator was denied its right to use ducts in the subway in the streets of the city of New York for its wires to furnish electricity for light to its customers, upon the sole ground that it had not lawful power to operate electrical conductors in any street, avenue, or highway in the city of New York; and the only question presented upon this appeal is whether the relator is so authorized. The relator was duly organized on October 21, 1896,

under the transportation corporations law (chapter 566, p. 1136, Laws 1890).   Article 6 of that act applies to gas and electric light corporations.   Section 60 provides for the incorporation of the company, and subdivision 2 of section 61 provides that every such corporation shall have the power—

"If incorporated for the purpose of using electricity for light, heat or power, to carry on the business of lighting by electricity or using it for heat or power in cities, towns and villages within this state, and the streets, avenues, public parks and places thereof, and public and private buildings therein; and for the purposes of such business to generate and supply electricity; * * * and to lay, erect and construct suitable wires or other conductors, with the necessary piles, pipes or other fixtures in, on, over and under the streets, avenues, public parks and places of such cities, towns or villages, for conduct-ing and distributing electricity, with the consent of the municipal authorities thereof, and in such manner and under such reasonable regulations, as they may prescribe."

The provisions of this section were taken from chapter 512, p. 562 of the Laws of 1879, section 2 of that act giving to any gaslight company organized under chapter 37, p. 48 of the Laws of 1848 the authority to manufacture and supply electricity, with the power to lay, erect, and construct suitable wires or other conductors, with the necessary poles, pipes, or other fixtures, in, on, over, and under the streets, avenues, parkways and places of such cites, towns or villages, with the consent of the municipal authorities thereof, and under such reasonable regulations as they may prescribe.   The 1st section of this latter act was amended by chapter 73, p. 70, of the Laws of 1882.

Upon the incorporation of the relator it thus became vested with a franchise to lay, erect, or construct suitable wires, or other conductors with the necessary poles, pipes, or other fixtures in, on, over, and under the streets, avenues, public parks, and places of the city of New York when the consent of the municipal authorities of that city was obtained.   I think it must be conceded that the Legislature, having power to grant this franchise absolutely, without the consent of the municipal authorities, had power to impose a condition requiring the consent of the municipal authorities of the city of New York before the franchise should be exercised; and having power to thus impose a condition, it could designate the officers who should give that consent.   Whether we call this conferring a franchise, or a condition required by the sovereign power before the franchise should be used, it was for the Legislature to say what officer or board of the municipality should be required to give his or its consent before the grant of the franchise became operative.   The statute requires the consent of the municipal authorities, and this, without other legislation would undoubtedly require the municipality to act through its legislative body by a resolution of the board of aldermen; but the Legislature had also the power at any time to modify this provision, and grant the franchise without condition, or to designate some other officer or board as the authority upon whose consent this franchise or right to use the streets of the city would become operative.

The claim of the relator is that section 1, chapter 716, p. 928, of the Laws of 1887 vested the power to give the consent required by chap-

ter 512, p. 562, Laws 1879, or by subdivision 2 of section 61 of the transportation corporations law, in the board of electrical control, and that that board having given its consent to the relator's using the streets of New York, the condition imposed by the transportation corporations law was complied with, and it became a corporation having lawful power to operate electrical conductors in the streets, avenues, or highways in the city of New York. Prior to the passage of this act of 1887, gas companies organized under the general law, whose right to do business was also subject to the consent of the municipal authorities, had by chapter 321, p. 512, of the Laws of 1886, to obtain the consent, not of the board of aldermen, but of the mayor, comptroller, and president of the department of taxes and assessments of the city of New York; but the consent of the board of aldermen was required before a corporation organized under the general act could use the streets for supplying electricity. Prior to the year 1887, the condition in the streets of New York in consequence of the overhead wires used by the telegraph, telephone, and electric light companies had become the subject of complaint, and for some years attempts had been made to compel the companies using the streets for such purposes to place their wires underground. The first attempt seems to have been the enactment of chapter 534, p. 647, of the Laws of 1884. This act directed the corporations or individuals so using the streets to remove the overhead wires on or before the 1st of November, 1885, and imposed a duty upon the local government of the city of New York to cause the wires to be removed and placed underground. By chapter 499, p. 852, of the Laws of 1885, a board of commissioners of electrical subways in cities having a population exceeding 500,000 was created and was charged with the enforcement of the act of 1884. This act was amended by chapter 503, p. 732, of the Laws of 1886. The board of electrical control created by these acts made certain contracts with a corporation known as the "Consolidated Telegraph & Electrical Subway Company," dated July 27, 1886, and April 7, 1887; but it had been held that the board had no power to make these contracts. Whereupon the Legislature, by chapter 716, p. 928, of the Laws of 1887, continued the board of elctrical control provided for by the acts of 1885 and 1886, imposing upon it the duty of enforcing the directions of the Legislature as to placing these electrical wires underground, and ratifying the contracts made with the Consolidated Telegraph & Electrical Subway Company.

The first section of that act provides that:

"From and after the passage of this act and until the first day of November, eighteen hundred and ninety, the board of commissioners of electrical subways in and for the city and county of New York, heretofore appointed under authority of the act, chapter four hundred and ninety-nine of the laws of eighteen hundred and eighty-five, together with the mayor of said city for the time being, are hereby constituted the board of electrical control in and for the city of New York. * * * All the powers and duties conferred or imposed by the said act, chapter four hundred and ninety-nine of the laws of eighteen hundred and eighty-five, upon the commissioners appointed thereunder in and for the city of New York, and all the powers and duties heretofore by any law conferred or imposed upon the local authorities of said city, or any of them, in respect to or affecting the placing, erecting, construction, suspension, maintenance, use, regulation or control of electrical conductors in

said city, are hereby transferred to and conferred and imposed upon, and shall hereafter be exclusively exercised and performed by the said board of electrical control, constituted as provided in this act, and its successors as hereinafter provided."

Section 3 (page 929) of the act provided that whenever, in the opinion of the board, in any street or locality of the city a sufficient construction of conduits or subways underground shall be made ready under the provisions of the act, the said board shall notify the owners or operators of the electrical conductors above ground in such street or locality to make such electrical connections in said street, or through other streets, localities or parts of the city with such underground conduits or subways, and to remove the poles, wires or other electrical conductors above ground; and that the commissioner of public works shall cause the same to be removed in case the owners or operators of such wires, piles, fixtures, or devices shall not cause them to be removed from the streets. Section 4 provides that it shall be unlawful after the passage of the act for any corporation or individual to take up a pavement of the streets of the city of New York, or to excavate in any of said streets for the purpose of laying underground any electrical conductors unless a permit in writing therefor shall have been first obtained from the said board, or its predecessor; and further provides:

"The said board of electrical control may establish, and from time to time may alter, add to or amend, all proper and necessary rules, regulations and provisions for the manner of use and management of the electrical conductors, and of the conduits and subways therefor constructed or contemplated under the provisions of this act, or any act herein mentioned."

Section 5 provides that:

"From and after the first day of November, eighteen hundred and ninety, all rights, powers and duties vested or existing in the said board of electrical control by this act created, or in the board of commissioners of electrical subways, heretofore existing in said city, shall vest in and shall thereafter be held and exercised by the commissioners of the sinking fund in the city of New York."

And section 9 (page 931) provides that:

"All acts and parts of acts inconsistent with this act are hereby repealed."

It must be plain from a study of this act, that it was the board of electrical control that was to have the absolute control over all electrical conductors, either under or above the streets in the city of New York. Under the provisions of section 3, no corporation after the passage of the act could excavate in the streets of the city of New York for the purpose of laying underground an electrical conductor, or construct, erect, or maintain any electrical conduits above the ground, unless a permit in writing therefor was first obtained from the board. The consent of the board was necessary before any corporation could use a franchise conferred under chapter 512, p. 562, of the Laws of 1879, as amended by chapter 73, p. 70, of the Laws of 1882, or the transportation corporations law; and this board was further authorized, by section 4 of the act under consideration, from time to time to make, alter, add to, or amend, all proper and necessary rules, regulations, and provisions for the man-

ner of use and management of the electrical conductors, and of the
conduits or subways therefor constructed or contemplated under the
provisions of the act. It was the clear intention of the Legislature
by this act to vest in this board, so long as it should continue in
existence, absolute, and complete control over all electrical con-
ductors in use in the city of New York; and taking sections 1 and 4
together, it seems to me to have been the evident intent to vest in the
board the power to say what corporation or individual should exer-
cise within the city of New York the right or franchise to operate
or maintain electrical conductors in the streets of the city.

Consider the authority conferred upon the board of section 1 of the
act. All the powers and duties conferred are imposed upon the com-
missioners appointed under the act of 1885, and—

"All the powers and duties heretofore by any law conferred or imposed upon
the local authorities of said city, or any of them, in respect to or affecting the
placing, erecting, construction, suspension, maintenance, use, regulation or
control of electrical conductors or conduits or subways for electrical conduct-
ors in said city are hereby transferred to and conferred and imposed upon,
and shall hereafter be exclusively exercised and performed by the said board
of electrical control, constituted as provided by this act, and its successors as
hereinafter provided."

Undoubtedly the board of aldermen, who prior to that time had
the power to consent to the use of the streets by a corporation
organized to furnish electricity in this city, were local authorities
of the city, and under section 512, p. 562, of the Laws of 1879, had
power to give the consent of the municipal authorities to a corpora-
tion organized under the act to lay, erect, and construct suitable wires
or other conductors in, on, over, and under the streets, avenues, parks,
and places of such city. By the express terms of the act of 1887, there
was conferred and imposed upon the board of electrical control, to be
thereafter exclusively exercised and performed by that board, all power,
and duties theretofore by any law conferred or imposed upon the
local authorities. If the board of aldermen at the time of the pas-
sage of this act was a local authority of the city of New York, and if
the power conferred upon it to consent to the use by a corporation
organized under chapter 512, p. 562, of the Laws of 1879, of the streets
of New York, was in respect to the placing, erecting, construction,
suspension, maintenance, use, regulation, or control of electrical con-
ductors or conduits or subways for electrical conductors in said
city, then that power was transferred, conferred, and imposed upon
the board of electrical control, and thereafter was to be exclusively
exercised and performed by it. It seems to me that the power to
consent to a corporation using the streets for that purpose was con-
ferred upon the board of electrical control. This board of electrical
control was continued in existence by various acts of the Legislature
up to and beyond the year 1896, and during that year continued
to exercise all powers and authority conferred upon it by the act of
1887. In the year 1890 the transportation corporations law was
passed, and there was incorporated in section 60 of that act sub-
stantially the same provisions that were contained in chapter 512, p.
562, of the Laws of 1879. The relator having been incorporated un-
der the transportation corporations law, it was required to obtain the

consent of the municipal authorities before it was authorized to use the streets of New York; but those municipal authorities were, I think, the authorities upon whom the act of 1887 had conferred this power to consent under the provisions of the act of 1879; and upon their consent being obtained, the relator was lawfully authorized to use the subways constructed in the city of New York.

It is said, however, that the decision of the Court of Appeals in Ghee v. Northern Union Gas Co., 158 N. Y. 510, 53 N. E. 692, is a controlling authority under this question, and that under it we are bound to hold that the municipal authorities whose consent was required under the transportation corporations law were the board of aldermen; but it seems to me that in that case an entirely different question was presented, which had no relation to the act of 1887 or the authority conferred thereby upon the board of electrical control. The question in that case arose under the charter of 1897 (chapter 378, p. 1, Laws 1897), and the question certified to the Court of Appeals was:

"Are the municipal authorities of the city of New York, whose consent is required to lay conductors for conducting gas through the streets of such city, under the transportation corporations law, the head of the department of public buildings, lighting and supplies, and the head of the department of highways, under the powers conferred by the charter of the city of New York, or are the 'municipal authorities' referred to in the said transportation corporations law the municipal assembly, or any other officer or body in the city of New York?"

The charter of 1897 united under one municipal government the cities of New York and Brooklyn, and other territory, creating a new city of New York. It provided for a municipal assembly, giving to it broad legislative powers, created heads of the departments upon whom was imposed administrative duties, and the question there was whether, under that charter, the power to consent was vested in the legislative body or in one of the administrative departments of the city of New York. One of the sections of the charter gave to the commissioners of the department of public buildings lighting and supplies cognizance and control of the making and performance of contracts in the matter of furnishing the city, or any part thereof, with gas, electricity, or any other illuminant, and of the use and transmission of gas, electricity, pneumatic power, and steam for all purposes in, upon, across, over, and under all streets, avenues, etc., and of the construction of electric mains, conduits, conductors, and subways in any such streets, and the granting of the permission to open streets, when approved by the department of highways; and another section of the charter provided that the commissioner of highways should have cognizance and control of regulating, grading, curbing, flagging, and guttering of streets and laying of crosswalks; and that no removal of the pavement or disturbance of the surface of any street for the purpose of constructing vaults or lateral ways, digging cellars, laying foundations of buildings, or other structures making sewer connections, or repairing sewers or pipes, of laying down gas and water pipes, steam pipes, and electric wires, or introducing the same into buildings, or for any purpose whatever, shall be made until a permit is first had from the department of highways. The con-

clusion of the Court of Appeals, was based entirely upon the general provisions of the charter, and considering the clauses giving all legislative power, which included the granting of all franchises for lighting by gas or electricity, or for tramways, or for other purposes, to the municipal assembly, the court determined that under the charter the municipal assembly were the local authorities whose consent was necessary under the transportation corporations law. What was given to these administrative officers by the charter was "cognizance and control." It was held that these words had been used for a period of 35 years before the New York charter:

"To describe a power strictly limited to the regulation of existing rights, and they cannot now be given an entirely different meaning from that in which they were used in the previous statutes referred to and relied upon, to some considerable extent, by the draftsmen of the present charter, in order to imply a power in these administrative officers, which otherwise, as we have seen, was properly vested in the municipal assembly. Examining the provisions of this charter bearing upon this subject, as we have seen, in the light of previous legislation, to which reference has been made, we have had no difficulty in reaching the conclusion that the consent that is necesary to confer a franchise upon a gas lighting corporation, can be given only by the municipal assembly through appropriate ordinances, but that when the consent has been granted to a corporation duly created, by which a corporate franchise, which is property, has been acquired, the administrative officers must be applied to for a permit that will allow the corporation to exercise such rights in order that the public convenience may be subserved."

It seems to me that a determination of a question as between the municipal assembly, and a strictly administrative officer, in considering the construction to be given to the provisions of the charter, had no bearing upon the power given to the board of electrical control, upon whom much broader power was conferred by the act of 1897, and which, as I view it, clearly includes within the powers to be exclusively exercised by the board the power to consent to the use of the streets of New York by a corporation organized to furnish electricity for lighting purposes.

My conclusion is that the relator was entitled to the mandamus asked for, and that the order appealed from should be reversed, with $50 costs and disbursements, and the mandamus granted, with costs.